373 P.2d 580

**P. Mart JORGENSEN and Marie A. Jorgensen, his wife, d/b/a Dimple Dell Floral Company, Plaintiffs and Respondents,**

**v.**

**HARTFORD FIRE INSURANCE COMPANY, a corporation, Defendant and Appellant.**

No. 9602.

Supreme Court of Utah.

July 23, 1962.

Hanson, Baldwin & Allen, Merlin R. Lybbert, Salt Lake City, for appellant.

Gustin, Richards & Mattsson, Salt Lake City, for respondents.

CROCKETT, Justice.

Plaintiffs suffered loss from the freezing of plants and bulbs in their greenhouse and sued to recover on the ground that this loss came within the terms of a fire insurance policy issued by the defendant. From a judgment by the court in favor of the plaintiffs, defendant appeals.

Plaintiffs operate the Dimple Dell Floral Company in the southern environs of Salt Lake City. Their greenhouse is heated by an oil furnace which is operated by an electric motor. The temperature is supposed to be maintained about 65 degrees and an alarm sounds when it drops below 53 degrees. On the occasion of interest to us, December 12, 1960, a below-freezing winter night, it sounded at about 11:30 p. m. When Mr. Jorgensen went to the furnace room he was "greeted by smoke and a burnt smell." He found that the furnace motor was not operating and was unable to get it to run. He called an electrician who found that it had "burned out" a bearing, and removed it to be taken for repairs. To keep his plants from freezing Mr. Jorgensen resorted to some expedients by burning fuel oil and newspapers in improvised heaters. They nevertheless suffered damages of upwards of $8,000. The trial court found that

this loss came within the provision of the policy protecting against "all direct loss by fire" to plaintiffs' greenhouse, plants and bulbs; and awarded judgment up to the limits of the policy ($5,000).

In approaching the problem whether the judgment can be sustained, the correctness of certain principles advocated by plaintiffs as favorable to doing so is conceded: that in case of ambiguity, uncertainty or doubt the terms of the policy will be construed strictly against the company and in favor of the insured;[1] that the plaintiffs are thus entitled to the broadest protection that they could reasonably believe the commonly understood meaning of its terms afforded them;[2] and that upon this review we are obliged to analyze the evidence and every reasonable inference fairly to be derived therefrom in the light most favorable to the plaintiffs.[3]

The controversy between the parties focused principally upon the question whether there was a fire. But in order to see in clear perspective the problems presented by the charge that the evidence does not support the findings and judgment, it is essential to consider separately that question and the further one: was fire the proximate

1. Cf. Continental Bank & Trust Co. v. Bybee, 6 Utah 2d 98, 102, 306 P.2d 773, 775 (1957).

2. Handley v. Mutual Life Ins. Co. of New York, 106 Utah 184, 191, 147 P.2d 319, 322, 152 A.L.R. 1278 (1944).

3. See Charlton v. Hackett, 11 Utah 2d 389, 390, 360 P.2d 176 (1961).

cause of the damage to the plaintiffs' plants?

To support its contention that the occurrence described was not a "fire" and thus not covered by the policy, the defendant relies on certain cases which so hold with respect to electric motors which had "burned out": Baron Corp. v. Piedmont Fire Ins. Co.,[4] where the charring or burning of electric wires, without more, was held not to be a fire; and Bass v. Security Ins. Co. of New Haven,[5] where an overheated and smoldering electric motor, without proof of light or flame, resulted in a similar holding.

We regard the evidence here as significantly different from those cases in showing the existence of the essential components of fire, which are: fuel, oxygen and heat. When the fuel and oxygen are ignited by heat, they unite in the process of combustion, producing the properties by which fire is usually identified: light, heat and flame. It is common knowledge that fires vary in character: some having much flame and little heat, others having much heat and little flame. Some originate by a flame igniting fuel and producing heat; in others heat first develops sufficient to produce flame.[6] If the essentials to constitute

a fire are present, neither the sequence in which they develop, nor the proportions in which they exist are of controlling importance in determining its identity as fire.

The testimony here shows that in addition to the smoke and burnt smell in connection with the burning out of this motor: that there had been sufficient heat to melt the copper wires and to produce a "glow"; that the insulation on the wiring was charred and that there were ashes; and most important, the electrician, Darrel Maynes, in response to a question as to whether there had been flame, stated, "There would have been, yes." In our opinion this evidence justifies a finding that there was at least some "fire."

But it is in the other question: whether the plaintiffs' damage was a "direct loss by fire," that we find the obstacle to the sustaining of the judgment. The most favorable way in which the situation may be stated for the plaintiffs' position is thus: that even though the failure of an electric motor from a malfunctioning bearing is not normally regarded as a "fire," inasmuch as in this instance there developed sufficient heat to burn up the insulation on the wires and to produce an actual flame, these things

---

4. 166 Misc. 69, 1 N.Y.S.2d 713 (1937).

5. 78 Pa.Dist. & Co. R. 26 (1951).

6. See Security Ins. Co. v. Choctaw Cotton Oil Co., 149 Okl. 140, 299 P. 882 (1931), where spontaneous combustion occurred from smoldering cottonseed hulls and was held to be a fire after there was flame.

centering around the stopping of the motor were one interrelated occurrence, which had the necessary components of, and therefore can reasonably be viewed as constituting a "fire"; and that it was this incident in the composite which caused their loss.

■ The difficulty with that argument is that the evidence shows with certainty that what caused the motor to stop was an internal mechanical failure—the burning out of a bearing—and not a fire. Plaintiffs' own witness testified that the motor failed because of a "bad bearing deep in the rotor shaft"; and explained that the extreme heat developed after the bearing had failed because the motor then could not use up the electricity flowing into it. It is so clear as to be inescapable that the real and efficient cause of the plaintiffs' loss was the stopping of the motor which would have occurred, and did so, regardless of whether or not fire and flame had developed in the insulation; and that this small flame which burned the insulation was only a collateral incident to the motor failure and had nothing to do with its malfunction. Accordingly, there is no foundation upon which the finding that the fire was the cause of the plaintiffs' loss can rest.

The very type of dispute which arose here appears to have been foreseen and the rights of the parties defined in the policy. In paragraph 14, relating to electrical apparatus, it states:

"This company shall not be liable for any electrical injury or disturbance to said electrical appliances or devices (including wiring) caused by electrical currents artificially generated *unless fire ensues, and if fire does ensue,* this company *shall be liable only for its proportion of loss caused by such ensuing fire."* (Emphasis added.)

In view of the fact that the finding that there was some fire is sustained, under the above provision, the plaintiffs are entitled to recover for whatever damage the fire of itself did to the insulation and/or to the motor. Inasmuch as the evidence presented and the damages awarded were based upon the premise that the entire occurrence amounted to a fire and that all of the plaintiffs' damages resulted therefrom it is necessary that the judgment entered be vacated and that the cause be remanded to determine and enter judgment in conformity with this opinion for only such damages as were actually caused by the fire. Costs to defendant (appellant).

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.