J.R. MAFFEI; Richard Maffei; Betty J. Maffei, Plaintiffs–Appellants,

v.

NORTHERN INSURANCE COMPANY OF NEW YORK; Maryland Casualty Co., Defendants–Appellees.

No. 92–15651.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1993.

Decided Dec. 27, 1993.

---

Philip Borowsky and Dennis Kruszynski, Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, San Francisco, CA, for plaintiffs-appellants.

Roxanne L. Holmes, Bronson, Bronson & McKinnon, San Francisco, CA, for defendants-appellees.

Before: HUG, Jr., FARRIS and BRUNETTI, Circuit Judges.

HUG, Circuit Judge:

This is an action by an insured, J.R. Maffei, against the two defendant insurance carriers for breach of contract, bad faith, and declaratory relief. The action was originally filed in state court, but then was removed by the defendants on the basis of diversity of citizenship, pursuant to 28 U.S.C. § 1441. The primary issue in this case is whether a discharge of sulfur dioxide resulted from a fire in a drum of sodium hydrosulfite or from a non-fire-related chemical reaction in the drum. The insurance policies of J.R. Maffei, Richard Maffei, and Betty J. Maffei ("Maffei"), underwritten by Northern Insurance of New York and Maryland Casualty Insurance Company, Defendants–Appellees, cover "hostile fires," but exclude other pollution claims.

The insurance companies refused to defend Maffei in several state court lawsuits for personal injury and property damage, which were brought against Maffei by third parties who alleged injury from exposure to sulfur dioxide smoke emitted from a drum of material stored adjacent to Maffei's warehouse in Berkeley. Maffei contends that the district court erred by striking the testimony of Maffei's fire and insurance experts, by placing the burden of proof on the plaintiffs, and by holding that there was no material issue of fact as to whether a fire occurred. We reverse the summary judgment and remand.

## I.

Maffei owned and operated a warehouse facility in Berkeley, California. Outside his warehouse, he stored 39 drums of various chemicals used in the manufacture of dry-cleaning products. Around 6:00 p.m. on September 16, 1989, neighbors noticed a thick whitish-yellow vapor cloud of smoke emanating from the vicinity of the drums. The fire department was summoned, and immediately began spraying the drum with water. This produced an explosion of some sort and a much larger thick dense cloud of whitish-yellow smoke. By 10:00 p.m., the cloud had begun to shrink, but the drum was still too hot to touch. Fire officials retrieved a piece of "molten metal-like material" that appeared to have been ejected from the drum. Experts were unable to examine the drum until 5:30 a.m., because it remained too hot to touch. The lid and walls of the drum were bulged outward. The bottom of the drum was "extremely corroded" and rusted through.

Three lawsuits involving over 40 plaintiffs were filed in state court to recover damages

for injuries suffered as a result of exposure to the sulfur dioxide cloud. Maffei tendered the lawsuits to the insurance companies for defense and indemnity, but the insurers refused the tender and denied coverage on the basis of the policies' pollution exclusions.

Maffei had two policies: a primary comprehensive general liability policy and an umbrella policy, both underwritten by the two insurance companies. Both policies contained a "Pollution Exclusion," which excluded from coverage damages for bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants. The exclusion defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The exclusion did not apply to bodily injury or property damage "caused by heat, smoke or fumes from a hostile fire." Amendment of Pollution Exclusion. "Hostile fire" was defined as one that "becomes uncontrollable or breaks out from where it was intended to be." The hostile fire exception to the pollution exclusion is at issue in this case.

Maffei submitted a declaration of a thermal engineering expert, Dr. Kimble Clark, concluding that there had been a fire. Dr. Clark testified that sodium hydrosulfite, when exposed to small amounts of moisture, decomposes into flammable sulfur compounds. The heat generated by the decomposition can ignite those compounds and produce emissions of sulfur dioxide gas and smoke. Sodium hydrosulfite is a flammable solid subject to spontaneous combustion. Dr. Clark, after discussing dictionary definitions and his own definition of fire, stated:

> Considering the above dictionary definitions and additional observations about the characteristics of fires, a composite definition of the word "fire" can be stated as follows:
>
> > A process where a substance reacts chemically with a second substance, usually called an oxidizer, to release heat, light and a flame comprised of gases and possibly suspended solid and liquid particles.

After discussing and analyzing the physical evidence available, he concluded:

> The composite definition of "fire" is satisfied in all respects by the physical evidence. There was a chemical reaction between a fuel and oxidizer which released heat. Also, a "flame" or cloud of gases was generated. The outer surface of the metal drum was too hot to touch, indicating its temperature exceeded 120 [degrees]—140 [degrees] F. This means that the contents at the core of the drum must have been at a temperature substantially in excess of [120–140 degrees F], perhaps by several hundred degrees.... [T]emperatures of only 400–500 degrees F are sufficient to cause [sodium hydrosulfite] to burn.... No visible light was noticed because the fire was confined to the interior of the drum and was further obscured by the cloud it generated....

Maffei also submitted a declaration of insurance expert Robert Holtom, who has experience in the drafting, teaching, and interpretation of commercial general liability and fire clauses. Holtom stated that the vapor cloud "constituted a hostile fire" as defined by the policy.

The district court found that no genuine issue existed for trial and granted the motion of defendants for summary judgment. The court held that (1) the defendants established that the pollution exclusion barred the plaintiffs' claim; (2) no evidence supported the plaintiffs' claim that the hostile fire exception applied, and (3) the plaintiffs failed to establish that a genuine issue of material fact existed with regard to the application of the hostile fire exception. The court struck the declarations submitted by Maffei because they were "unnecessary" under Fed.R.Evid. 702, and because the Holtom declaration impermissibly asserted an unsupported legal conclusion. The court also found that Maffei failed to demonstrate that any fire occurred, and that a reasonable jury could not conclude that a fire occurred in the drum based on the evidence submitted by the plaintiffs.

**II.**

We review an order granting summary judgment *de novo. T.W. Electrical*

*Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 629 (9th Cir.1987). We must view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire and Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

The primary question is whether there is a genuine issue of material fact about whether a fire occurred, within the meaning of the insurance policies. Maffei contends that there was a fire and explains that no one saw any flame because (1) the burning was confined to the interior of the drum; (2) no one was present when the fire began; and (3) any visible light that may have escaped the drum was obscured by the dense smoke.

The district court, however, stated that it was taking "a common sense approach" to the question, as compelled by California law, and noted that what occurred appeared to have been a chemical reaction, which no reasonable jury could conclude was a fire within the meaning of the exception to the exclusion.

The district court asked whether there was a fire, or a chemical reaction producing the vapor that could be called something less than a fire. He referred to a "high school definition" of fire as "oxidation rapid enough to produce heat and light," and concluded that there was "substantial evidence" that there was no fire, as fire is commonly understood.

The policies covered bodily injury and property damage caused by heat, smoke or fumes from a hostile fire. "Hostile fire" is defined by the policy as one that "becomes uncontrollable or breaks out from where it was intended to be." Beyond that, "fire" is not defined by the policies.

Under California law, the " 'clear and explicit' meaning of [policy] provisions, interpreted in their 'ordinary and popular sense,' unless used by the parties in a technical sense or a special meaning is given to them by usage, controls judicial interpretation." *AIU Insur. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 831, 799 P.2d 1253,

1264 (1990) (in bank). "[I]f the meaning a layperson would ascribe to contract language is not ambiguous," that meaning should be applied. *Id.*

Although California has not considered the question, several other jurisdictions have interpreted "fire" when used in insurance policies as involving "visible heat and light," according to the popular definition of "fire." *See Washington State Hop Producers, Inc. v. Harbor Ins. Co.,* 34 Wash.App. 257, 660 P.2d 768, 769 (1983) (holding that heat-producing oxidation that "browns" hops is not necessarily a fire, and requiring presence of some flame, glow, or light); *Hartford Fire Ins. Co. v. Electrical Dist.,* 9 Ariz.App. 374, 376–77, 452 P.2d 539, 541–42 (1969).

The *Hop Producers* court relied on dictionary definitions of "fire" and "combustion," and on other cases considering "fire." "The law does not require that a glow actually be observed, but merely that if there had been an observer in the middle of the pile, who secured his vantage without introducing any extraneous oxygen, he could have observed an actual glow." *H. Schumacher Oil Works, Inc. v. Hartford Fire Ins. Co.,* 239 F.2d 836, 839 (5th Cir.1956), *quoted in Hop Producers,* 660 P.2d at 769. *See also Jorgensen v. Hartford Fire Ins. Co.,* 13 Utah 2d 303, 373 P.2d 580, 581–82 (1962) (testimony by electrician that there would have been a flame in or about a motor after a bearing had burned out was sufficient to show that there had been some fire).

A common dictionary definition of fire is "a rapid persistent chemical reaction that releases heat and light." *The American Heritage Dictionary,* New College Edition, 1976. This definition, not unlike that of Dr. Clark or of the district court, is a definition that a purchaser of insurance would reasonably understand as the meaning of fire. There appears to be no question that there was a rapid chemical reaction that produced heat. The only question is whether it also produced light. Since no one was able to see whether light was produced in the drum, expert testimony based on scientific analysis of the chemical reactions would seem to be the only way this determination can be made.

■ Maffei did offer evidence, an expert declaration by Dr. Kimble Clark, concluding, "The composite definition of fire is met in all respects by the physical evidence." This required heat, light and a flame comprised of gases. We hold that the court erred by refusing to admit Dr. Clark's declaration.

■ The standard of review applicable to a district court's order excluding evidence in the context of summary judgment proceedings is abuse of discretion. *McGlinchy v. Shell Chemical Co.,* 845 F.2d 802, 806 (9th Cir.1988). Reversal is necessary if the erroneous exclusion (or admission) caused prejudice. *See Pau v. Yosemite Park & Curry Co.,* 928 F.2d 880, 888 (9th Cir.1991).

Maffei contends that expert testimony was necessary because the incident involved a chemical compound with unique properties beyond the knowledge of the ordinary lay person, and scientific knowledge of the properties of the compound is necessary to understand what had happened.

■ Expert evidence is admissible under Rule 702 if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. The court must determine whether (1) the subject at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion. *United States v. Winters,* 729 F.2d 602, 605 (9th Cir.1984). An expert may offer an opinion or inference as to an ultimate issue to be decided by the trier of fact, according to Rule 704(a). Fed.R.Evid. 704(a).

■ The district court concluded that expert testimony was not necessary to determine, by using common sense, whether a fire had occurred. However, it is reversible error in a summary judgment proceeding to exclude expert testimony offered by a plaintiff on a factual issue if the exclusion deprives the plaintiff of a permissible inference that could be drawn by the finder of fact on that issue. *See Bieghler v. Kleppe,* 633 F.2d 531, 533 (9th Cir.1980) [1] (admitting expert evidence concerning cause of accident and noting that where plaintiff's evidence supports inference that defendant's negligence was more probably than not the proximate cause of an accident, it is sufficient to defeat summary judgment, *even if it is not highly convincing or persuasive* ). Courts in other jurisdictions have admitted expert testimony to determine whether a fire occurred. *See, e.g., Jorgensen,* 373 P.2d at 581 (Utah) (referring to electrician's testimony). Expert opinions about the *causes* of fires often are admitted. *See Manney v. Housing Authority,* 79 Cal. App.2d 453, 180 P.2d 69, 73 (1947) ("The cause of other fires may be so foreign to the common experience of the ordinary juror that he cannot know without the aid of expert testimony whether a fire might be expected to result or not. For example, whether the combination of two chemical products would result in combustion ... only the evidence of experienced and trained chemists might enable the jury to arrive at the correct conclusion."); *see also George v. Bekins Van & Storage Co.,* 33 Cal.2d 834, 205 P.2d 1037 (1949).

Dr. Clark stated that moisture and air had entered the drum through its corroded bottom; this resulted in the decomposition of the contents into flammable sulfur and various oxidizing compounds; the heat generated by the reaction ignited those flammable sulfur compounds; and the fire generated the sulfur dioxide cloud. The dissent mischaracterizes Dr. Clark's definition as including only oxidation, heat, and a " 'flame' or cloud of gases," and not requiring the presence of light. However, in his conclusion that the composite definition of fire was satisfied, Dr. Clark explained that "[n]o visible light was noticed because the fire was confined to the

---

1. In *Bieghler,* the court held that the expert's affidavit should have been admitted. Although the affidavit did not describe in detail the manner in which the expert had arrived at his conclusions, it gave more than a bare conclusion that the defendants had been negligent. Furthermore, the expert concluded that the Government's negligence had caused the accident, not that it *might* have caused the accident. The court held that the evidence was sufficient to defeat a motion for summary judgment. *Id.* at 534; *see also Bulthuis v. Rexall Corp.,* 789 F.2d 1315, 1316–18 (9th Cir.1985).

interior of the drum and was further obscured by the cloud it generated." Arguably this is sufficient evidence from which a reasonable fact finder could conclude that a fire had occurred.[2]

Dr. Clark's qualifications to give an opinion as to whether there was a fire in the drum that was responsible for the release of the dioxide are not at issue. The circumstances of the release were unwitnessed and thus required scientific deductions from circumstantial evidence. The exclusion of Dr. Clark's affidavit was prejudicial. As Maffei argues, the instrumentalities involved were of a nature beyond the common experience of lay persons, and Dr. Clark's opinion was helpful and necessary. The order striking Dr. Clark's affidavit was an abuse of discretion. Dr. Clark's affidavit presented evidence that there was a fire in the drum and should have been considered.

### III.

If there was a fire inside the drum, the insurance companies contend that the fire still would not satisfy the policy's definition of "hostile fire." Because the fire was contained within the drum, they argue, it was not "uncontrollable" or beyond a place where it was intended to be. The district court did not reach this issue.

Hostile fires have not been limited to fires that were originally intentional and then grew out of hand. Generally, "hostile" fire refers to any unintended fire in an unintended location. There appears to be no California law on point. Other jurisdictions that have considered the term "hostile fire" have held that it includes any unintended fire, whether originally a friendly fire or not. *See, e.g., Youse v. Employers Fire Insur. Co.,* 172 Kan. 111, 238 P.2d 472 (1951).

California interprets exclusionary clauses strictly against the insurer and liberally in favor of the insured. *See Pepper*

*Industries, Inc. v. Home Insurance Co.,* 67 Cal.App.3d 1012, 134 Cal.Rptr. 904, 908 (1977) (pollution exclusion held to exclude only claims for contamination, not for fire and explosion resulting from discharge). We conclude that under California law, if a fire occurred, it would fall within the definition of "hostile fire."

### IV.

Because the district court held that no fire occurred, it did not reach the question of whether the fire was hostile. However, the court struck the declaration of insurance expert Robert Holtom on the subject, on the ground that it asserted an unsupported legal conclusion. Maffei contends that the court should have reached the issue and admitted the testimony.

Maffei's position is that the "hostile fire" definition is unambiguous and includes the fire that Maffei alleges occurred. However, Maffei offered Holtom's testimony in case the court determined that the term was ambiguous or did not apply to the fire in the drum.

Whether a contract provision is ambiguous is a question of law. If it is, ordinarily summary judgment is improper because differing views of the intent of parties will raise genuine issues of material fact. *United States v. Sacramento Municipal Utility District,* 652 F.2d 1341, 1344 (9th Cir.1981). Under California law, a party may present extrinsic evidence to show that a facially unambiguous contract is susceptible of another interpretation. *See Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866, 873 (9th Cir.1979), *cert. denied,* 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

First, "hostile fire," as discussed above, is not ambiguous. Second, Holtom did not specifically testify as to custom and usage. He described his background, recited the policy language, and then simply stated:

Based on my experience and expertise, as indicated above, it is my opinion that the

---

2. The transcript shows that the district court also excluded Dr. Clark's and Mr. Holtom's declarations because they got "into the element of fact-finding and into the element of decision making, which is really reserved to the court or reserved to the jury." An expert may offer an opinion or inference as to an ultimate issue to be decided by the trier of fact. Fed.R.Evid. 704(a). However, the judge's written order states only that Mr. Holtom's declaration was excluded for this reason.

"vapor cloud" generated by sodium hydrosulfite in a metal drum on September 16, 1989, constituted a hostile fire as defined in Endorsement CG 00 41 05 86, and that the policy exclusion f(1) does not apply.

The declaration was properly excluded.

## V.

Maffei contends that the court improperly assigned Maffei, as plaintiff, the burden of establishing that the loss did not fall within the exclusion, rather than imposing upon the defendants the burden of establishing that the loss did fall within the exclusion.

The court stated:

Under the *Celotex* and *Matsushita* standards, the defendants have made an affirmative showing and have shifted the burden to the plaintiffs to create or show a genuine issue of material fact on the question of whether there was a hostile fire. Plaintiffs have done so by filing two declarations....

The court then struck the declarations and held that there was "substantial evidence" that no fire had occurred.

■ Rule 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552 (where nonmoving party would bear burden of proof at trial, moving party may rely on pleadings and allege that the nonmovant failed to establish an element essential to that party's case; nonmoving party must then designate specific facts showing there is a genuine issue for trial). The moving party must show the absence of a genuine issue concerning any material fact, but it need not produce evidence to do so; it may merely point out to the court the absence of evidence. *Id.* at 325, 106 S.Ct. at 2553.

■ At trial, Maffei would have the burden of proving that damage occurred and that the claimed loss is comprehended by the policy's general coverage provisions. *See New Castle County v. Hartford Acc. and Indem. Co.*, 933 F.2d 1162, 1181 (3d Cir. 1991). The insurance companies would then have the burden of proving that the damage was not covered by the policy due to the pollution exclusion. *State Farm Fire and Cas. Co. v. Martin*, 872 F.2d 319, 321 (9th Cir.1989); *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 151 Cal.Rptr. 285, 292, 587 P.2d 1098, 1105 (1979) (in bank); *see also New Castle*, 933 F.2d at 1181.

■ California courts have not decided which party has the burden of proving an exception to an exclusion. Other jurisdictions have held both ways. *See New Castle*, 933 F.2d at 1181–82 (burden on insurance company, but listing cases assigning burden to insured); *U.S. Fidelity & Guaranty Co. v. Morrison Grain Co.*, 734 F.Supp. 437, 442–43 (D.Kan.1990), *aff'd*, 999 F.2d 489 (10th Cir. 1993).[3] The *New Castle* court reasoned that because the exception is part of an exclusionary clause, the "traditional distinction between coverage clauses and exclusionary clauses" would result in allocating the proof of exception burden to the insurance company. *New Castle*, 933 F.2d at 1182.

Thus, Maffei argues, the insurance companies had the burden of proving beyond dispute that no hostile fire occurred, which they failed to do. Maffei relies on *State Farm Fire and Casualty Co. v. Martin*, 872 F.2d 319, 321 (9th Cir.1989). The district court in *Martin* held that "defendants' complete failure to provide any evidence in support of its dispute as to the causes of damage to their home" required summary judgment in favor of the plaintiffs. *State Farm Fire and Cas. Co. v. Martin*, 668 F.Supp. 1379, 1383 (C.D.Cal.1987). The Court of Appeals held that the district court had erred by holding that the nonmoving party had failed to make a sufficient showing of an essential element, on which the moving party would have the burden at trial. The insurer bears the burden of proving an excepted risk or the appli-

---

**3.** A California appellate decision that held that the insured had the burden of proving an exception to an exclusion was ordered depublished by the California Supreme Court. *Marglen Industries, Inc. v. Aetna Casualty & Surety Co.*, 4 Cal. App. 4th 414, 5 Cal.Rptr.2d 659, *rehearing denied and opinion modified*, March 30, 1992, *review denied and depublication ordered*, June 25, 1992.

cability of an exclusion. *Martin,* 872 F.2d at 321.

However, in this case, the court did not impermissibly shift the burden of proof. Rather, the court simply held that as a threshold matter, there was no evidence that a fire had occurred.

Still, the insurance companies have failed to meet their burden of showing that the exclusion applied and the exception did not, by showing that there was an absence of evidence that a hostile fire occurred. They assert that they submitted "undisputed evidence showing the loss was the result of pollution" and evidence that no fire occurred. However, they cite only Richard Maffei's deposition and a complaint against Maffei filed in state court by a third party. Maffei's deposition simply describes the event as a "chemical reaction;" he does not state that no fire occurred. The state court complaint states that the cloud of toxic sulfur dioxide was emitted after the sodium hydrosulfite came in contact with water. It does not refer to a fire or to a chemical reaction, and does not appear to be proof of anything except that certain plaintiffs sued Maffei for injuries arising from their inhalation of the sulfur dioxide.

Dr. Clark's affidavit setting forth his expert opinion that a fire occurred in the drum was adequate admissible expert opinion evidence to dispute the carrier's evidence that the exclusion applied. If, in fact, a fire did occur in the drum, it is clear that it was unintended and uncontrollable and thus a hostile fire.

### CONCLUSION

The district court erred by failing to consider Dr. Clark's declaration. A material question of fact exists as to whether a fire occurred within the drum. We reverse and remand for further proceedings consistent with our opinion.

**REVERSED AND REMANDED.**

FARRIS, Circuit Judge, dissenting:

I dissent because Dr. Clark's declaration did not provide evidence that a fire took place in the drum.

We may affirm the district court's decision on any grounds supported in the record even if the district court reached its decision for different reasons. *See United States v. Washington,* 969 F.2d 752, 755 (9th Cir.1992) *cert. denied,* — U.S. —, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993); *Lofton v. Heckler,* 781 F.2d 1390 (9th Cir.1986). Assuming arguendo that the majority has correctly concluded that the expert testimony was improperly struck, Maffei has failed to allege that a fire took place in the drum within the meaning of the hostile fire exception. We should therefore affirm the granting of summary judgment.

The district court correctly held that the parties contemplated the term "fire" would be defined in its "ordinary and popular sense." *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 274 Cal.Rptr. 820, 831, 799 P.2d 1253 (1990). Under California law, "if the meaning a layperson would ascribe to contract language is not ambiguous," that meaning should be applied. *Id.* The district court defined fire as "oxidation rapid enough to produce heat and light." Although California courts have never ruled on the matter, courts in other states have defined fire similarly. *See, e.g., Washington State Hop Producers, Inc. v. Harbor Ins. Co.,* 34 Wash.App. 257, 660 P.2d 768, 769 (1983); *Hartford Fire Ins. Co. v. Electrical Dist.,* 9 Ariz.App. 374, 376–77, 452 P.2d 539, 541–42 (1969).

Dr. Clark defined "fire" as "a process whereby a substance ... undergoes a chemical reaction, generally with an oxidizer, usually oxygen. This reaction releases heat, light and gases." Dr. Clark also maintained that "[i]n many cases, the products of a fire are not visible, i.e., only a very small amount of 'light' is emitted in the visible wavelength range." Dr. Clark concluded that *his* "composite definition of 'fire'" was "satisfied in all respects by the physical evidence." However, he subsequently stated that the chemical reaction in the drum consisted of oxidation, heat, and "a 'flame' *or* cloud of gases." (emphasis added).

The majority adopts Maffei's argument that the definition of fire employed by his expert is consistent with the definition used by the district court. The majority ignores two important distinctions. First, Dr. Clark opined that a fire can consist of oxidation, heat and a " 'flame' or cloud of gases." Sec-

ond, Dr. Clark maintains that the flame generated by the fire need not be visible. Dr. Clark's definition of fire includes chemical reactions that are excluded by the specific language of the insurance policies. There is no evidence that would raise a genuine issue of material fact regarding the "hostile fire" exception.

The majority opinion will potentially allow Maffei to obtain insurance coverage that he did not bargain or pay for. If followed, it will surely affect insurance premiums since it overrides specific exclusions that the insurer *and* the insured bargained for. Maffei may benefit initially, but he and others similarly situated will surely pay in the future.

I respectfully dissent.