MURGUIA, Circuit Judge,
dissenting:
The majority’s holding that use of a thermal lance, when ignited to burn through and melt metal automated teller machine (“ATM”) vaults during a bank robbery, does not involve the use of fire under 18 U.S.C. § 844(h)(1) is counter to the ordinary and common definition of fire. Because defendants’ use of a thermal lance to commit bank larceny constitutes the use of fire to commit a felony for purposes of 18 U.S.C. § 844(h)(1), I would affirm each sentencing enhancement.
I.
A.
Samuel Eaton devised a scheme to steal money from local banks’ ATM vaults. For the first robbery, Eaton recruited Christopher Williams, a co-conspirator who was charged separately and testified for the prosecution at trial, as well as Clinton Thompson III and Tavrion Dawson. In order to open the metal ATM vault and steal the monies locked inside, Eaton used a thermal lance. While Eaton used the thermal lance to melt through the vault exterior, Williams operated, a makeshift extinguisher—a hand-held sprayer filled with water—to contain the fire and prevent it from burning up the monies housed inside. Eaton and Williams absconded with approximately $80,000, leaving behind charred walls, scorched $20 bills strewn across burnt tile flooring, a vault coated with orange soot, and the pungent odor of smoke permeating the air.[1]
Less than two weeks after the first heist, Eaton, together with Williams and Thompson, committed a second bank robbery. Eaton again used a thermal lance to burn through the ATM vaults’ exteriors while Williams operated a makeshift extinguisher to prevent the spread of fire and incineration of the money. This time, Eaton and Williams absconded with ' over $151,000, leaving behind burned out vaults and additional physical damage to the premises.
A jury convicted Thompson, Dawson, and Eaton of, among other things, conspiring to use fire to commit bank larceny in violation of 18 U.S.C. § 844(m)[2] Their *1022 sentences were increased pursuant to 18 U.S.C. § 844(h)(1), which authorizes an enhancement for anyone who “uses fire” to commit a felony that can be prosecuted in federal court. On direct appeal, Thompson, Dawson, and Eaton challenge the sentencing enhancements, contending that use of a thermal lance is not akin to “use[ of] fire” under section 844(h)(1). Their challenge should fail.
B.
The thermal lance, also referred to as a “ ‘burning bar,’ ” Construction Industry Publications, House Builders Health & Safety Manual 30-7 (May 2008), consists “of a bundle of steel rods inside a steel tube____Oxygen ... is passed down the tube and the end is lit with the aid of an oxy/acetylene torch. The result is a spectacular white-hot firework flame with formidable penetrating powers.” N.A. Dow-nie, Industrial Gases 322 (2002); accord John S. Scott, Dictionary of Civil Engineering 455 (4th ed.1993). To operate the thermal lance, a user squeezes a handle on the torch to commence the flow of oxygen through the tube containing the cutting rods. Then the user brings a striker plate into contact with the tip of the torch to generate a spark that reacts with the oxygen flowing inside the tube. See also 21 The New Illustrated Science and Invention Encyclopedia: How it Works 2807 (1988) (explaining that “[p]ure oxygen is blown down the tube, the core wire catches fire, then bums with intense heat.” (emphasis added)).
Once ignited, the thermal lance produces a flame that burns at temperatures exceeding 10,000 degrees Fahrenheit. The flame continues to burn so long as oxygen flows through the torch and the cutting rods are not depleted. During use, the thermal lance generates sparks, splatter, and molten material. A police detective testified at trial that the thermal lance is a dangerous tool because it incorporates a “fire factor” that burns everything with which it comes into contact. See also Construction Industry Publications, supra, at 30-7 (identifying fire as the “principal hazard associated with thermic lancing”); Neil A. Downie, The Ultimate Book of Saturday Science 422 (2012) (“Like any flame, the thermic lance will set fire to things that are flammable ....”). Indeed, oxygen-fueled thermal lances are “particularly useful for ... igniting furnaces.”[3] 17 Marshall Cavendish Corp., How It Works: Science and Technology 2142 (3d ed.2003).
The thermal lance may be used to cut, pierce, and gouge metal. While these techniques suggest that a thermal lance operates in a manner similar to a saw blade, side handle grinder, or other cutting tool, the thermal lance actually interacts with a surface differently: it changes the surface’s state of matter through extreme heating and melting. See id. (explaining that a thermal lance “uses the heat released by a substance burning in pure oxygen to cut through a material by melting it”); see also Clifton Smith & David J. Brooks, Security Science: The Theory and Practice of Security 125 (2013) (explaining that thermal lances heat metal “to the kindling or ignition temperature and rapidly oxidiz[e] it by a regulated jet of oxygen”). By way of analogy, both an ice pick and a lit candle can alter the shape of a *1023 block of ice, but only the latter can melt ice into water.
Although the thermal lance instructional manual entered into evidence “makes no mention of fire, except to warn of the risk that fire may result” from its use, Majority op. at 1016, it contains multiple references to terms that we commonly and logically associate with the presence of fire. These include “burn”; “burning tip”; “flame”; “ignition”; “sparkling”; “striker plate”; and “torch.”[4] For example, users are cautioned to “[ajlways wear flame or spark resistant clothing,” “[njever point the torch at anybody,” “[njever use any other rods as hazardous backflashes or internal burning may occur,” and “[njever allow falling sparks or molten metal” to contact the instrument. Moreover, users are advised that the “[rjod sparkling indicates ignition ” and they should “[pjlace the burning tip of the rod against the target máterial” at an angle. Use of any of these terms does not remove the fire element from a thermal lance.
II.
Since this appeal raises a question of statutory construction and interpretation, which we address de novo, United States v. Norbury, 492 F.3d 1012, 1014 (9th Cir. 2007), we first look to the language of 18 U.S.C. § 844(h)(1), United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241-42, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). “A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.” Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). Thus, when the plain meaning of a statutory provision is unambiguous, that meaning controls. Demarest v. Manspeaker, 498 U.S. 184, 190, 111 S.Ct. 599, 112 L.Ed.2d 608 (1991); see also Conn. Nat’l Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) (“When the words of a statute are unambiguous, then, this first canon is also the. last: ‘judicial inquiry is complete.’ ’.’ (quoting Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981))). In other words, where “the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion,” Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917); see also Von Eichelberger v. United States, 252 F.2d 184, 186 (9th Cir.1958) (“The provision of the statute under which the indictment ... was drawn is plain and unambiguous and needs no resort to provisions of other enactments to make its meaning clear.”).
A.
Section 844(h) provides, in relevant part: Whoever—
(1) uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States, ...
including a felony which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device shall, in addition to the punishment provided for such''felony, be sen-fenced to imprisonment for 10 years. In the case of a second or subsequent conviction under this subsection, such per *1024 son shall be sentenced to imprisonment for 20 years.
18 U.S.C. § 844(h)(l)-(2) (2011). Subsection (m) provides that a person who conspires to commit an offense under section 844(h) “shall be imprisoned for any term of years not exceeding 20, fined under this title, or both.” Id. § 844(m). The absence of a definition for “fire” in section 844(h)(1) requires us to attribute to “fire” its ordinary, contemporary, and common meaning. Perrin, 444 U.S. at 42, 100 S.Ct. 311; cf. United States v. Ressam, 553 U.S. 272, 274, 128 S.Ct. 1858, 170 L.Ed.2d 640 (2008) (analyzing 18 U.S.C. § 844(h)(2), which addresses carrying an explosive “during the commission of any felony,” and concluding that there was “no need to consult dictionary definitions of the word ‘during’ in order to arrive at the conclusion that respondent engaged in the precise conduct described in” the statute).
Fire is an unambiguous term that does not account for variations in size, intensity, or our ability to contain it. We have observed that “[a] common dictionary definition of fire is ‘a rapid persistent chemical reaction that releases heat and light.’ ” Maffei v. N. Ins. Co. of N. Y., 12 F.3d 892, 896 (9th Cir.1993). Another lexicon defines fire as “the phenomenon of combustion as manifested in light, flame, and heat and in heating, destroying, and altering effects,” Webster’s Third New International Dictionary 854 (2002), and a third indicates that fire is “popularly conceived as a substance visible in the form of flame or of ruddy glow or incandescence,” 5 The Oxford English Dictionary 942 (2d ed.1989). Strikingly absent from any of these definitions is any distinction, introduced for the first time by the majority, related to the sustainability of a flame[5] and the presence of sparks.[6] Since the meaning of “fire” is not subject to debate, I must conclude that 18 U.S.C. § 844(h)(1) is unambiguous: anyone who “uses fire” to commit a felony that can be prosecuted in federal court can be charged under the statute. Accord United States v. Hayward, 6 F.3d 1241, 1246 (7th Cir.1993) (“Our reading of section 844(h)(1) leads us to conclude that the intent of Congress is clearly expressed in the language of the statute.”), overruled on other grounds by United States v. Colvin, 353 F.3d 569 (7th Cir.2003). The majority’s invocation of legislative history to illuminate the statute’s meaning is therefore erroneous.[7]
B.
Having concluded that 18 U.S.C. § 844(h)(1) is unambiguous and fire, in fact, means fire, I cannot ignore the glaring reality that a thermal lance incorporates every characteristic of fire. Neither *1025 could the jury, which found that defendants used fire to commit—and conspire to commit—bank larceny. First, fire is generated from a chemical reaction that involves the presence of oxygen. See, e.g., Raymond Friedman, Principles of Fire Protection Chemistry and Physics 255 (3d ed.1998) (explaining-that fires burning in oxygen-enriched atmospheres “not only burn hotter and faster but also, not surprisingly, are more difficult to extinguish”). Similarly, the thermal lance used by defendants could not operate without an oxygen tank that fueled the chemical reaction necessary to ignite the instrument. Second, fire is created by using friction—rubbing two sticks, striking a match, scratching the flint wheel on a cigarette lighter—to generate a spark that initiates that chemical reaction. See, e.g., Arthur E. Cote & Percy Bugbee, Principles of Fire Protection 53 (1988) (explaining that mechanical heat energy in the form of friction frequently causes fire and observing that the “ageless procedure for starting a fire by rubbing sticks together is an example of ignition by mechanical heating”). Similarly, defendants used a striker plate, which created friction when it contacted the torch’s cutting rods, to generate the spark initiating the chemical reaction that, in turn, ignited the flame. Third, fire produces a visible flame, heat, and sparks when it interacts with a substance. Similarly, the thermal lance produces a visible flame at the tip of the torch, generates heat exceeding 10,000 degrees Fahrenheit, and sparks when the torch interacts with a substance. In essence, a thermal lance is a large, industrial version of an ordinary cigarette lighter: a user ignites it, and it emits light, a flame, and heat.[8]
The majority also declares that a thermal lance, which can operate underwater, cannot possibly generate fire because the latter, in its view, “would not sustain if submerged in water.” Majority op. at 1016 n. 9. However, fire can, in fact, burn while submerged. See, e.g., Mark W. Huth, Residential Construction Academy: Basic Principles for Construction 65 (3d ed.2012) (explaining that “oxygen for an underwater magnesium fire comes from the water” and welding processes that use “pure oxygen, supplied in tanks,” significantly increase the danger of fire); see also Friedman, supra, at 255-56 (discussing fires that can occur in nonatmospheric pressure environments, including underwater).
The majority’s attempt to redefine “fire” defies science and runs counter to our common sense meaning and fundamental understanding of fire. For the same reasons we ascribe the term “fire” to warmth emanating from' the hearth, an uncontrolled conflagration with which firefighters contend, and light flickering from a candle, “fire” properly describes the flame emanating from a thermal lance’s burning torch.' Ultimately, the majority agrees. See Majority op. at 1017 (conceding that a “ ‘mini-fire ’ ” burns “at the tip of the thermal lance” (emphasis added)).
III.
In order for a district court to impose a sentencing enhancement under section 844(h)(1), the government must prove that a person “uses fire ... to commit any felony” that can be prosecuted in federal court. 18 U.S.C. § 844(h)(1). The Second Circuit, relying solely on the plain language of section 844(h)(1), has determined that “to ‘use’ fire means the accused must *1026 have carried out the crime by means of fire.”[9] United States v. Desposito, 704 F.3d 221, 227 (2d Cir.2013). I agree. Here, there was more than sufficient evidence to convict defendants of using and conspiring to use fire during the commission of each bank robbery. As the Seventh Circuit has explained, “there is a significant difference between using fire simply to commit a felony and using fire to facilitate or assist in the commission of a felony.” Hayward, 6 F.3d at 1246. The former implicates 18 U.S.C. § 844(h)(1), but the latter does not. See id. at 1246-47. In this case, defendants’ use of the thermal lance was integral to their commission of the crimes because, absent fire emanating from the thermal lance torch to burn through and melt the metal ATM vaults, defendants could not access the monies they stole. Cf. id. at 1246-47 (distinguishing the circumstance in which a thief uses a cigarette lighter “as a light source to help him insert the key into the lock of the truck he wants to steal” and explaining that, in such a case, the lighter merely “facilitates or assists in the commission of the crime”). Defendants brought a thermal lance to the crime scene for one purpose: to ignite a flame capable of burning at an extremely high temperature that would melt the ATM vaults and enable them to extract the monies stored inside. It therefore defies logic to conclude that fire is only incidental to use of the thermal lance and played no part in the actual commission of bank larceny.[10]
■ Congress did not limit application of a sentencing enhancement under 18 U.S.C. § 844(h)(1) to anyone who employs a par *1027 ticular process or utilizes a specific tool or instrument to create fire that is used to commit a felony. Despite the majority’s creative efforts to recast the facts, defendants used fire, which they ignited with a thermal lance, to commit their crimes. Nothing in section 844(h)(1) insulates defendants from sentencing enhancements simply because the fire they used emanated from the torch of a.thermal lance and not from a less sophisticated fire-generating device.
Section 844(h)(1) also requires the use of fire to commit “any felony____” 18 U.S.C. § 844(h)(1) (emphasis added). “Read naturally, the word ‘any has an expansive meaning, that is, ‘one or some indiscriminately of whatever kind.’ ” United States v. Gonzales, 520 U.S. 1, 5, 117 S.Ct. 1032,137 L.Ed.2d 132 (1997). Because Congress “did not add any language limiting the breadth of that word,” id., the word “any” in section 844(h)(1) refers to all, not a specific subset of, felonies. See Wildes, 120 F.3d at 471 (holding that “ ‘any felony’ as used in § 844(h)(1) is not limited to offenses involving the commission of arson and therefore includes conspiracy to violate civil rights by burning a cross”); United States v. LaPorta, 46 F.3d 152, 156 (2d Cir.1994) (explaining that section 844(h)(1), while “limited to fire or explosives, sweeps more broadly; it proscribes generally the use of these means to commit ‘any’ federal felony” (emphasis added)); Hayward, 6 F.3d at 1246 (concluding that section 844(h)(1), with “simple, clear terms[,] ... does not limit itself to the prosecution of arson cases”). A defendant who uses fire to commit any federal felony, therefore, may be charged with violating 18 U.S.C. § 844(h)(1).[11]
The executive branch is responsible for investigating and prosecuting crime. Whether fire is used to commit a felony depends upon the facts surrounding the commission of each crime. The task of deciding whether a case involves potential violations of 18 U.S.C. § 844(h)(1) and (m) falls upon the federal prosecutor, who possesses broad discretion to determine what charges to bring. See United States v. Kidder, 869 F.2d 1328, 1335 (9th Cir.1989). Such discretion, the Supreme Court observed, “is an integral feature of the criminal justice system, and is appropriate, so long as it is not based upon improper factors.” United States v. LaBonte, 520 U.S. 751, 762, 117 S.Ct. 1673, 137 L.Ed.2d 1001 (1997). While a prosecutor’s discretion is not unfettered, see Abuelhawa v. United States, 556 U.S. 816, 823 n. 3, 129 S.Ct. 2102, 173 L.Ed.2d 982 (2009); Bor-denkircher v. Hayes, 434 U.S. 357, 365, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the majority’s speculation about hypothetical prosecutions is inappropriate. See United States v. Sevens, 559 F.3d 274, 287-88 (5th Cir.2009) (concluding that “Supreme Court precedent requires us to consider only the elements of use of fire and the particular predicate offense at issue rather than any possible use of fire to commit any conceivable felony” and emphasizing that “courts must engage in realistic probabilities, not theoretical possibilities, in determining how statutes might be violated”). Since defendants unequivocally used—and conspired to use—fire to commit bank larceny, their prosecution under and the sentencing enhancements they received in accordance with 18 U.S.C. § 844(h)(1) were proper.
CONCLUSION
When it enacted 18 U.S.C. § 844(h)(1), Congress determined that anyone who *1028 “uses fire” to commit a felony that can be prosecuted in federal court is eligible for a sentencing enhancement. Our common, contemporary understanding of fire—a chemical reaction producing light, heat, and a flame—has remained unchanged throughout human history. The flame generated by a thermal lance, which is fueled by an oxygenated chemical reaction that produces light and burns at over 10,-000 degrees Fahrenheit, falls within the plain meaning of “fire.”
Defendants used—and conspired to use—fire, which they ignited and controlled with a thermal lance, to commit bank larceny by burning and melting metal ATM vaults. Without use of the fire generated by a thermal lance, defendants’ scheme to steal monies secured inside those vaults would have gone up in smoke. Since 18 U.S.C. § 844(h)(1) allows for sentencing enhancements under these facts, I would affirm each sentence.[12] Accordingly, I respectfully dissent.

. The majority's contention that defendants “assiduously avoided starting a fire by spraying the ATM with water the entire time that they operated the thermal lance tool,” Majority op. at 1016, lacks merit in light of the condition in which the defendants left the premises. Defendants simply contained the fire that they started. Cf. Larry F. Jessus, Welding: Principles and Applications 211 (5th ed.2004) (explaining that “[fjilms have portrayed the oxygen lance as a tool used by thieves to cut into safes” but that "[i]n reality, this would result in the valuables in the safe being destroyed”).

. .A grand jury returned indictments charging defendants with bank larceny in violation of *1022 18 U.S.C. § 2113(b), conspiracy to use fire during the commission of a felony in violation of 18 U.S.C. § 844(m), and the use of fire during the commission of a felony in violation of 18 U.S.C. § 844(h)(1).

. Thus, the majority’s assertion that the thermal lance, "when used in the ordinary manner, does not contemplate starting fires,” Majority op. at 1019, is incorrect.

. Other common synonyms for “fire,” of course, are: “flame,” "conflagration,” "blaze,” “heat,” “glow,” "warmth,” "luminosity,” "combustion,” "pyre,” “flare,” and "inferno” (nouns); "kindle,” "ignite,” "inflame,” "light,” and "burn” (verbs); and "scorched,” "smoldered,” and “heated” (adjectives). Webster’s New World Thesaurus 163 (3d ed.2003).

. The majority incorrectly construes fire to require a sustained flame. Majority op. at 1016. Rather, fire requires the interaction of fuel, oxygen, and heat to create a sustaining chemical reaction that facilitates combustion. See National Fire Protection Association, Fundamentals of Fire Fighter Skills 128 (2004) (explaining that combustion "is a rapid, self-sustaining process that combines oxygen with another substance and results in the release of heat and light”).

. What the majority characterizes as "particle-like sparks” are, in fact, fire. See 16 The Oxford English Dictionary 118 (2d ed.1989) (defining the term "spark” as "[a] small particle of fire, an ignited fleck or fragment, thrown off from a burning body or remaining in one almost extinguished” (emphasis added)).

.The majority also errs by applying the rule of lenity to 18 U.S.C. § 844(h)(1). "Application of the rule of lenity is appropriate only when there remains ‘a grievous ambiguity’ in the language of the statute after a court has used every method of statutory construction to resolve it.” United States v. Wildes, 120 F.3d 468, 471 (4th Cir.1997). Section 844(h)(1) is devoid of any ambiguity, grievous or otherwise.

. The majority’s attempt to liken the thermal lance to a household iron, which we do not ■ commonly consider "uses fire” to remove wrinkles from fabric, is anemic and misplaced. The soleplate of an iron simply does not emit light or generate a flame, and it certainly does not require combustion for operation.

. The majority's embracement of another Second Circuit case, United States v. Graham, 691 F.3d 153 (2d Cir.2012), vacated on other grounds, — U.S. -, 133 S.Ct. 2851, 186 L.Ed.2d 902 (2013), is wholly inapposite. In Graham, the Second Circuit addressed whether use of a firearm, which "expel[s] bullets by the combustion of gunpowder or other explosive material contained within the cartridge,” id. at 160-61, constituted use of an "explosive” for purposes of 18 U.S.C. § 844(h). It answered that question in the negative.
The Second Circuit's analysis focused upon something we do not have in this case: a definition of the term at issue. Congress, the Second Circuit explained, expressly and comprehensively defined the term "explosive,” see 18 U.S.C. § 844(j), to include "gunpowders” as part of "a list of materials” that included high explosives, detonators, detonating agents, and blasting materials, 691 F.3d at 161. "In ordinary usage,” the Second Circuit reasoned,
a person carrying a single unspent pistol cartridge in his pocket—a cartridge containing a small amount of gunpowder—is hardly deemed by virtue of this to be armed with gunpowder or an explosive. We do not think Congress intended this result, nor do we think ... that a single 9-millimeter cartridge falls within its definition of explosive[ ] simply because the cartridge contains a small quantity of gunpowder—is reasonable.
Id. It further concluded that ammunition is not an explosive for purposes of 18 U.S.C. § 844(j) simply because it may be fired from a gun. Id. at 162.
Graham, therefore, focused upon whether "gunpowder” from a single firearm fell within the statutory definition of "explosives.” This case does not present us with a similar question because section 18 U.S.C. § 844(h)(1) neither qualifies nor quantifies "fire.” Where, as here, "a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning.” Smith v. United States, 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) (citing Perrin, 444 U.S. at 42, 100 S.Ct. 311). As I explained above, fire simply means fire, and nothing in Graham alters that conclusion.

. The majority's reasoning is nonsensical. The defendants did not use the thermal lance to illuminate their path inside the banks until they reached the ATM vaults. Instead, they specifically used the intense fire emanating from the thermal lance torch to burn through the vaults and gain access to the monies stored inside. Use of the thermal lance in this case was therefore essential, not incidental, to the commission of the bank larcenies.

. Such felonies include, but are certainly not limited to, mail fraud, see United States v. Beardslee, 197 F.3d 378, 384 & n. 3 (9th Cir. 1999), bank larceny, and tampering with evidence, see Desposito, 704 F.3d at 224 & n. 3. .

. Whether the resulting sentences are overly harsh is not a question for us to decide.