**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles WINTERS, Defendant-Appellant.**

No. 83–1058.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1984.

Decided March 26, 1984.

Mervyn Hamburg, Asst. Atty. Gen., Washington, D.C., for plaintiff-appellee.

Hugh Wesley Goodwin, Fresno, Cal., for defendant-appellant.

Before DUNIWAY, Senior Circuit Judge, and FARRIS and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

On this appeal, Winters challenges his convictions for kidnapping in violation of 18 U.S.C. § 1201(a) (1982), and for transporting women in interstate commerce for immoral purposes in violation of the Mann Act, 18 U.S.C. § 2421 (1982).[1]

Winters argues that we should reverse these convictions because the trial judge improperly permitted the jury to hear testimony about prior similar acts that Winters had committed and expert testimony about the subjects of post-traumatic stress disorder [2] and forced prostitution. We affirm.

## I

The evidence, viewed in the light most favorable to the government, *United States v. Larios*, 640 F.2d 938, 940 (9th Cir.1981), shows that in late September 1981, defendant Winters parked his van at a truck stop in Castaic, California, and picked up three young women who were hitchhiking to Washington State. Winters drove north and stopped in Hanford, California. There he forced Darlene Beltran, one of the hitchhikers, to spend the night in his van, where he beat and raped her. The other two hitchhikers thought that Darlene wanted to stay with Winters, so they continued hitchhiking on their own. Thereafter, Winters beat and raped Darlene on numerous occasions. He also forced her into prostitution at migrant labor camps. Twice, she attempted but failed to escape. Winters responded by beating her further and by threatening her life.

---

1. Winters does not challenge the jury's verdicts on two firearms counts, 18 U.S.C. § 924(c)(2) & app. § 1202(a)(1) (1982).

2. For an explanation of post-traumatic stress disorder, see *infra*, pp. 604–605.

In early October 1981, Winters drove with Darlene to Sacramento, where he met an old acquaintance, Eileen Finnstrom. Eileen needed money. Winters assured her that, in Los Angeles, he could obtain the money she needed. She then decided to join Winters and Darlene.

However, instead of going directly to Los Angeles, Winters drove his van to Illinois. During the trip to Illinois, Winters beat and raped both Darlene and Eileen on numerous occasions. Through threats and intimidation, he forced them to engage in numerous acts of prostitution at truck stops, migrant labor camps, and other places.

On the return trip, while driving through a snowstorm in Cheyenne, Wyoming, Winters lost control of his van. He, Darlene, and Eileen were hospitalized. At the hospital, Darlene and Eileen met a minister who, after learning of their plight, helped them escape from Winters' grasp by securing them a ride to San Diego, where they called the FBI. Federal criminal prosecution followed.

During Winters' trial, the government called to the witness stand three young women whose testimony showed that Winters had victimized them in the same way he later victimized Darlene and Eileen. The government also called two expert witnesses. Dr. Wait Griswold, a psychiatrist, testified that the degrading experiences Winters had inflicted on Darlene and Eileen caused them to suffer from post-traumatic stress disorder, which effectively prevented them from taking advantage of opportunities to escape. Raymond Cameron, a forensic psychologist, testified about how a woman can be conditioned to submit to forced prostitution.

## II

The trial court admitted testimony showing that before committing the offenses alleged in the indictment, Winters had similarly beaten, raped, and forced three other young women into prostitution. Winters challenges the admission of this testimony, and contends that it was either irrelevant character evidence or overly prejudicial.

A trial court may admit evidence of prior similar acts for any non-character purpose, Fed.R.Evid. 404(b), if the probative value of the evidence outweighs the danger of unfair prejudice, Fed.R.Evid. 403; *United States v. Young*, 573 F.2d 1137, 1140 (9th Cir.1978). During trial, defense counsel sought to demonstrate to the jury that Winters was not the brutal character that Darlene and Eileen portrayed; that the two women had freely chosen to live with him; and that he had not forced them to engage in acts of prostitution. In so doing, Winters raised the issues of whether the women's conduct was voluntary and whether he had the requisite intent to abduct and debauch them. Thus, the prior similar acts testimony was relevant to establish Winters' modus operandi, motive, and intent, *United States v. Escalante*, 637 F.2d 1197, 1204 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980), and was therefore admissible under Fed.R.Evid. 404(b). *See e.g., United States v. Ratley*, 284 F.2d 553, 554 (2d Cir.1960) ("Evidence of other similar crimes ... to show intent ... is particularly pertinent in Mann Act cases.")

To reduce the danger of unfair prejudice, the court instructed the jury that the prior similar acts testimony was admitted for the limited purpose of showing Winters' plan, motive, and intent, and that Winters was on trial only for offenses alleged in the indictment. We must assume that the jury adhered to the court's limiting instructions. *United States v. Sullivan*, 595 F.2d 7, 8–9 (9th Cir.1979). We therefore conclude that the trial court did not abuse its discretion in determining that under Fed.R.Evid. 403, the probative value of the prior similar acts testimony outweighed the danger of unfair prejudice.

## III

Winters challenges the admission of expert testimony about both post-traumatic stress disorder and forced prostitution. He asserts that the trial court should not have admitted the testimony because these sub-

jects are not beyond the common knowledge of the average layman.

A qualified expert witness may testify if the witness' "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue ...." Fed.R.Evid. 702. Testimony is admissible under Rule 702 if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion. *McCormick's Handbook of the Law of Evidence* § 13, at 29–31 (E. Cleary 2d ed. 1972).

During trial, Winters directed the jury's attention to the fact that his two alleged victims failed to take advantage of opportunities to escape or call for help, behavior indicating that they had voluntarily joined him and consented to whatever sexual activity occurred.

To assist the jury in understanding the women's conduct and to dispel any notion that they voluntarily submitted to Winters, the government called as an expert witness Dr. Wait Griswold, a psychiatrist. Dr. Griswold told the jury that Darlene and Eileen had suffered from post-traumatic stress disorder, a condition described as a profound personality change following a period of severe psychological stress. He stated that, Darlene and Eileen, suffering from post-traumatic stress disorder, failed to escape or cry out for help when in a public place because they lacked sufficient ego-strength, self-confidence, and willpower when they were in the threatening shadow of Winters' complete domination over them. Dr. Griswold further testified that Darlene and Eileen were likely to escape only if they were in a secure place, among people interested in their welfare, and out of Winters' immediate presence, as occurred after the incident in Cheyenne.

The government also called as an expert witness Raymond Cameron, a forensic psychologist who has worked extensively with police vice units. His testimony before the jury was limited to the narrow field of forced prostitution. He testified that women subjected to forced prostitution move through different stages, from seduction to assault, and through a dehumanizing conditioning process designed to make them feel completely helpless. The conditioning process includes deprivation of proper diet, sleep, money, and means of identification. Cameron stated that the more a woman resists the conditioning process, the more likely her captor will subject her to severe abuse designed to instill the feeling of complete helplessness. He further testified that eventually, only subtle threats would be required to maintain control over the victim.

Upon reviewing the record, we are satisfied that the trial court was well within its broad discretion in admitting the expert testimony. The court properly determined that the subject matter of psychiatrist Griswold's and psychologist Cameron's testimony was beyond the common knowledge of the average layman, that their expert testimony would assist the jury to understand the evidence, and that their testimony complied with Rule 702. *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir. 1981).

The convictions are AFFIRMED.