967 F.2d 593
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daryl James FAULKENBERRY, Defendant-Appellant.
 No. 86-3092.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1992.
Decided June 16, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Daryl James Faulkenberry ("Faulkenberry") appeals his conviction and sentence under 18 U.S.C. §§ 1201 and 924(c) (1988) for kidnapping and use of a firearm. Faulkenberry argues that: (1) the district court erred in admitting evidence of his prior bad acts; (2) the court imposed an unlawful sentence; (3) the district court erred in admitting an allegedly suggestive out-of-court lineup; (4) the district court erred in denying his motion for substitution of counsel; and (5) his conviction should be reversed because of extensive delays in preparing the trial transcript for this appeal. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1) (1988). We reject each of Faulkenberry's arguments. The conviction and sentence are affirmed.
 
 BACKGROUND
 
 3
 Faulkenberry was convicted of kidnapping and use of a deadly weapon connected with his abduction and rape of Christi Clark on September 4, 1985. After initially abducting Ms. Clark in Boise, Idaho, Faulkenberry drove with Ms. Clark through parts of Oregon and Washington. After this extended ordeal, Faulkenberry abandoned Ms. Clark and her truck in Vancouver, Washington.
 
 
 4
 Faulkenberry was arrested on September 6, 1985. At the time of his arrest, police found a pistol, a CB radio stolen from Ms. Clark's truck, and a note written by Christi Clark that he had taken from her during the ordeal.
 
 
 5
 On September 13, 1985, Christi Clark travelled to Vancouver to view a lineup. Faulkenberry's appointed counsel, James P. Swanger, was present at the lineup. Ms. Clark viewed the six white males in the lineup, and identified Faulkenberry from among them.
 
 
 6
 At trial, the government introduced testimonial evidence from two women who Faulkenberry had kidnapped and raped previously. The circumstances in those cases were significantly similar to Christi Clark's case. The commonalities include: use of a deadly weapon; demands for oral sex; raping the victims from behind; binding the victims; forcing one of the other victims to urinate in an empty container rather than use a bathroom; and calling his victims "girl" or "lady."
 
 
 7
 On the first day of trial, Faulkenberry's appointed attorney[1] moved to substitute counsel, stating that Faulkenberry was unhappy with the way he was handling the case.[2] The court denied the motion.[3]
 
 
 8
 After Faulkenberry's jury conviction, the district judge sentenced him to 300 years in prison, making him eligible for parole only after serving 99 years.
 
 DISCUSSION
 I. PRIOR BAD ACTS
 
 9
 Faulkenberry argues that the evidence of his earlier misconduct was not probative of any relevant issue and was unfairly prejudicial. He further contends that limiting instructions given to the jury were inadequate.
 
 A. Probative Value
 
 10
 We review the district court's admission of evidence under Fed.R.Evid. 404(b) for abuse of discretion. United States v. Lewis, 837 F.2d 415, 418-19 (9th Cir.), cert. denied, 488 U.S. 923 (1988).
 
 
 11
 The district court may admit evidence of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b); United States v. Hadley, 918 F.2d 848, 850 (9th Cir.1990), cert. granted, 112 S.Ct. 1261 (1992). Such evidence is admissible only if the probative value substantially outweighs the danger of unfair prejudice. Fed.R.Evid. 403; United States v. Winters, 729 F.2d 602, 604 (9th Cir.1984).
 
 
 12
 To establish the admissibility of the prior bad acts, the government must satisfy a five-part test. United States v. Brown, 880 F.2d 1012, 1014 (9th Cir.1989). The government must establish that: (1) the evidence of the prior conduct tends to show a material element of the charged offense; (2) in some cases, the prior conduct is similar to the offense charged; (3) the defendant committed the earlier act; (4) the probative value is not substantially outweighed by the danger of unfair prejudice; and (5) the earlier act is not too remote in time. Id. at 1014 (citing United States v. Sarault, 840 F.2d 1479, 1485 (9th Cir.1988)).
 
 
 13
 During trial, Faulkenberry implied that Christi Clark was a willing participant in the events in question. By so doing, Faulkenberry raised the issues of whether Clark's conduct was voluntary and whether he had the requisite intent to abduct her. Thus, the prior similar acts testimony was relevant to establish Faulkenberry's modus operandi, motive, and intent. See Winters, 729 F.2d at 604. The other factors similarly weigh in favor of admitting the evidence of prior acts. We therefore find that the prior bad act evidence was relevant to the present case, and that the district court did not abuse its discretion in admitting it.
 
 B. Limiting Instructions
 
 14
 We review Rule 404(b) limiting instructions for abuse of discretion. United States v. Butcher, 926 F.2d 811, 816 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991). A district court does not abuse its discretion when its instructions to the jury fairly cover the issues presented. Id.
 
 
 15
 In the present case, the court instructed the jury that the prior similar acts testimony was admitted for the limited purpose of showing Faulkenberry's "motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This language mirrors Rule 404(b). Moreover, the district court also told the jury that Faulkenberry was on trial only for offenses alleged in the indictment. We find that the court fairly covered the issues presented.
 
 
 16
 We must assume that the jury adhered to the court's limiting instructions. United States v. Sullivan, 595 F.2d 7, 8-9 (9th Cir.), cert. denied, 442 U.S. 933 (1979). Accordingly, we conclude that the trial court did not abuse its discretion.
 
 II. SENTENCE
 
 17
 Faulkenberry next argues that the district court exceeded its authority by sentencing him so that he would not be eligible for parole until he served 99 years. He further states that his 300-year sentence is unconstitutionally disproportionate. We review the legality of a criminal sentence de novo. United States v. Whitworth, 856 F.2d 1268, 1288 (9th Cir.1988), cert. denied, 489 U.S. 1084 (1989).
 
 A. Parole
 
 18
 The case controlling this issue is United States v. Gwaltney, 790 F.2d 1378 (9th Cir.1986), cert. denied, 479 U.S. 1104 (1987). In Gwaltney, we interpreted 18 U.S.C. § 4205(a) and (b) (1988), concluding that when read in conjunction, these sections "provide that a federal prisoner sentenced to more than a year's incarceration automatically becomes eligible for parole after serving one-third of his sentence or ten years, whichever is less, unless the sentencing judge 1) specifies in the sentence a minimum period of incarceration, which minimum may not exceed one-third of the maximum sentence imposed." Id. at 1387 (emphasis added).
 
 
 19
 The district court ordered that Faulkenberry would not be eligible for parole until he served 99 years of his sentence. This order is valid because the 99-year limit is less than one-third of the maximum sentence of 300 years. We therefore conclude that Faulkenberry's sentence is legal.
 
 B. 300-Year Sentence
 
 20
 Faulkenberry next argues that under Solem v. Helm, 463 U.S. 277 (1983), his sentence is unconstitutionally disproportionate to his crime because neither death nor treason is involved. Faulkenberry's argument is without merit.
 
 
 21
 Solem is inapposite to the present case. In Solem, the defendant was sentenced to life without parole for writing a bad check. Faulkenberry's case is far more egregious. In light of the Supreme Court's decision in Harmelin v. Michigan, 111 S.Ct. 2680 (1991), we find it impossible to conclude that Faulkenberry's sentence was unconstitutionally disproportionate.[4]
 
 III. IDENTIFICATION
 
 22
 Faulkenberry next argues that the pretrial lineup identification procedure was impermissibly suggestive. He bases his argument on Ms. Clark's initially erroneous description of her abductor and the allegedly significant physical differences between Faulkenberry and other members of the lineup.
 
 
 23
 There is a split of authority on the appropriate standard for reviewing pretrial identification procedures. See United States v. Dring, 930 F.2d 687, 692 (9th Cir.1991), petition for cert. filed, 60 U.S.L.W. ---- (U.S. May 11, 1992) (No. 91-8200) (acknowledging, but not resolving, dispute). Because the result in this case is the same under either a de novo or an abuse of discretion standard of review, we need not resolve this issue on appeal.
 
 
 24
 To determine the reliability of out-of-court identification procedures, we use a five-part test. Id. (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)). The factors include: "(1) [t]he opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Id. at 692-93.
 
 
 25
 Christi Clark had extensive opportunity to see and observe Faulkenberry during the commission of this crime. Her degree of attention was significant. Although her initial description of Faulkenberry was erroneous[5] she ultimately provided an accurate description. At the lineup, she was very certain in her identification.[6] Finally, the lineup was held just nine days after her abduction.
 
 
 26
 Considering all of the relevant factors, we conclude that the district court did not err in admitting evidence of the out-of-court lineup.
 
 IV. SUBSTITUTION OF ATTORNEY
 
 27
 Next, Faulkenberry argues that the district court erred in denying his counsel's motions to withdraw and substitute new counsel. We review the district court's decision for abuse of discretion. United States v. Garcia, 924 F.2d 925, 926 (9th Cir.), cert. denied, 111 S.Ct. 2809 (1991).
 
 
 28
 We consider three factors when reviewing the district court's denial of substitution. Id. First, we consider the timeliness of the motion. Second, we review the adequacy of the district court's inquiry into the defendant's complaint. Finally, we consider whether the conflict created a total lack of communication such that the defendant was unable to present an adequate defense. Id. (citing United States v. Gonzales, 800 F.2d 895, 898 (9th Cir.1986)).
 
 
 29
 A district court has extensive discretion to deny a motion for substitution made on the eve of trial if a continuance would be required. Id. Faulkenberry's motions were made on the first day of trial. There is no question that a continuance would have been necessary. It was within the court's discretion to deny the motions.
 
 
 30
 Although the district court did not inquire into Faulkenberry's complaints, it appears that such inquiry was not necessary because Faulkenberry's counsel adequately explained the reasons for his request. Finally, there was no showing that the differences between Faulkenberry and his counsel hindered the presentation of Faulkenberry's defense. The trial transcript reveals that Faulkenberry and his counsel were discussing trial strategy, specifically whether he should take the stand and testify in his own defense. We conclude that the district court did not abuse its discretion in denying Faulkenberry's motion.
 
 V. DELAY IN THE PRODUCTION OF TRANSCRIPTS
 
 31
 Finally, Faulkenberry argues that his conviction should be reversed due to the extreme delay in preparing the trial transcripts for this appeal.[7]
 
 
 32
 It has been recognized that extreme delay in processing an appeal may amount to a violation of due process. United States v. Antoine, 906 F.2d 1379, 1382 (9th Cir.), cert. denied, 111 S.Ct. 398 (1990). In Antoine, the Ninth Circuit adopted a four-factor test for evaluating this type of claim. Id.
 
 
 33
 The four relevant factors are: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant." Id. Although the first three factors weigh in Faulkenberry's favor, he has suffered no actual prejudice.[8] See Id. at 1382-83 (establishing three types of actual prejudice that may occur due to extensive delays in producing transcripts for appeal).
 
 CONCLUSION
 
 34
 Faulkenberry's conviction and sentence are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Counsel at trial was Allan Bentley
 
 
 [2]
 The transcript indicates that the first motion was made on January 3, 1986. A review of the docket sheet, however, shows that the motion was actually heard on February 3
 
 
 [3]
 Faulkenberry renewed his motion on the first day of his second trial. This motion was also denied
 
 
 [4]
 In Harmelin, the Court upheld a sentence of life without the possibility of parole for defendant's possession of 650 grams of cocaine
 
 
 [5]
 The victim testified that the reason for her erroneous description was her fear that Faulkenberry would "get out, and ... harm one of [her] family."
 
 
 [6]
 The record indicates that although she was initially calm, she became very nervous, began crying, and her voice started shaking when she saw the lineup. She testified that she initially considered not identifying Faulkenberry again for fear of reprisal against her or her family
 
 
 [7]
 Faulkenberry experienced a five year delay in waiting for the preparation of necessary court transcripts
 
 
 [8]
 Faulkenberry was convicted in Oregon state court for first degree murder and is serving a life sentence concurrent to his federal sentence