UNITED STATES of America,
Plaintiff–Appellee,

v.

Gloria Ann MORALES, Defendant–
Appellant.

No. 94–10507.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 26, 1996.

Decided March 5, 1997.

Larry Kupers, Assistant Federal Public Defender, San Francisco, CA, for defendant-appellant.

Stephen H. Jigger, Assistant United States Attorney, San Francisco, CA, for plaintiff-appellee.

Before: HUG, Chief Judge, and BROWNING, SNEED, FLETCHER, REINHARDT, HALL, NOONAN, THOMPSON, FERNANDEZ, RYMER and HAWKINS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Federal Rule of Evidence 704(b) precludes an expert, testifying as to the mental state or condition of a defendant, from stating "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed. R.Evid. 704(b). There is a conflict in our circuit concerning the admissibility of expert testimony under this rule when an expert is asked to give an opinion on a predicate matter from which a jury might infer the defendant's required *mens rea.*

In *United States v. Brodie,* 858 F.2d 492 (9th Cir.1988), we held Rule 704(b) precluded an expert from testifying to a predicate matter from which the jury might "extrapolate" whether the defendants possessed the necessary *mens rea. Id.* at 496. In cases decided since *Brodie,* however, we have held Rule 704(b) does not preclude an expert from testifying to a predicate matter, even if the jury might infer the necessary *mens rea* from such testimony, so long as the testimony as

to the predicate matter does not necessarily imply the *mens rea* element. *See United States v. Rahm,* 993 F.2d 1405, 1411–12 (9th Cir.1993); *United States v. Gomez–Norena,* 908 F.2d 497, 501–02 (9th Cir.), *cert. denied,* 498 U.S. 947, 111 S.Ct. 363, 112 L.Ed.2d 326 (1990). We take this opportunity to overrule *Brodie.*

In the present case, Gloria Ann Morales, a bookkeeper, was convicted of two misdemeanor counts of willfully making false entries in a union ledger in violation of 29 U.S.C. § 439(c). She appeals the district court's exclusion of expert testimony that she had a weak grasp of bookkeeping principles. She proffered this testimony to establish a predicate from which the jury could infer she lacked the necessary *mens rea.* The district court did not specify which rule of evidence it relied upon in excluding the testimony.

We have jurisdiction under 28 U.S.C. § 1291. We hold that the district court erred if it excluded the proffered testimony under Rule 704(b). Nor was the testimony excludable under Federal Rules of Evidence 702, 103(a)(2), (b), or 403. The error in excluding the testimony was not harmless, and we reverse Morales's conviction.

## FACTS

Gloria Ann Morales worked as the exclusive bookkeeper for Local 304 of the Laborers' International Union of North America (the Local) from 1988 to 1991 when she was terminated. As part of her bookkeeping duties, she recorded in a bookkeeping ledger all monies received by the Local and all bank deposits made. She was also responsible for preparing all bank deposits and keeping copies of deposit slips after she sent the deposits to the bank.

Each page of the bookkeeping ledger Morales used represented one month. Each page had an "Amount" column in which all income received each day was to be recorded, and a "Deposit" column in which all bank deposits actually made each day were to be recorded.

Morales accurately recorded the Local's receipts in the "Amount" column. Her re-

cording of deposits, however, was flawed. Each time she entered an amount of receipts in the "Amount" column, she entered a matching figure in the "Deposits" column even though she did not actually make a matching deposit that day. She would make the deposit with future receipts when sufficient funds became available to equal the undeposited amount.

The Local did not discover what Morales was doing until 1991 when she told the Local's secretary-treasurer, Julian Vega, that money was missing but that she did not know how much or for how long.

A special audit by the Local's regular auditor, Sondra Melling, revealed that approximately $36,000 was missing. Morales could not produce deposit slips or money for all of the "deposits" she had recorded.

Morales was charged with one felony count of embezzlement from a labor organization in violation of 29 U.S.C. § 501(c) and two misdemeanor counts of willfully making false entries in union records required to be kept by federal law in violation of 29 U.S.C. § 439(c).

One of the crucial issues at Morales's jury trial with regard to the false entry charges was whether her admitted bookkeeping inaccuracies were intentional or were the result of her ignorance of proper bookkeeping procedures. The government elicited testimony from three witnesses who testified that in their opinions Morales had a relatively strong grasp of bookkeeping procedures. Sandra Pritchett, who preceded Morales as the Local's bookkeeper and trained Morales for her bookkeeping duties, testified that Morales had "a very good understanding" of her training and that she ranked in the top third of the individuals Pritchett had trained as bookkeepers. Sondra Melling, the Local's auditor, testified that Morales exhibited "an understanding of the bookkeeping process," and appeared "knowledgeable concerning both handling receipts and disbursements." Morales's supervisor, Julian Vega, testified that Morales was a "very, very good employee, and she is a very, very intelligent person, very knowledgeable.... She happens to know everything that needs to be known, at least done in that office...." He also testi-

fied, however, that she was never given any sort of training manual or written instructions with regard to her new assignment as bookkeeper, and that at the time he hired Morales (originally as a dispatcher), he did not know if she had had any bookkeeping training or experience.

Morales testified that although she now knows the entries she made in the "Deposit" column were incorrect, she did not know they were incorrect when she made them. She thought that was the way it was supposed to be done. She denied having any intention to make any false entries and denied stealing any money. She also testified she never completed high school, never had any course or training in bookkeeping or accounting, and had received very limited training and supervision by the Local.

Morales proffered expert testimony from Hilary Crosby, a certified public accountant with twenty years of bookkeeping and auditing experience, regarding Morales's level of knowledge and understanding of bookkeeping principles. The district court sustained the government's objection to the admission of this testimony, but did not state what federal rule of evidence it relied upon in excluding it. The court stated it would not allow Crosby "to testify as to what Ms. Morales did or did not understand" because "that is a conclusion that ... is properly within the jury." The court explained that

> obviously Ms. Morales can testify to it herself. But I don't know that this witness can testify [that] just because someone does or does not manifest an understanding does not mean that they necessarily don't understand. But she can testify to what she observed that is inconsistent with good or average or even marginal bookkeeping practices that could then lend itself to an argument that [Morales] didn't understand.

The jury acquitted Morales of the felony embezzlement charge but convicted her of the two misdemeanor counts of willfully making false entries. She was sentenced to a three-year term of probation and required to perform eighty hours of community service.

On appeal, Morales contends the district court erred by excluding Crosby's proffered expert testimony relating to Morales's lack of understanding of bookkeeping principles.

## DISCUSSION

### A. Standard of Review

 We review for abuse of discretion the district court's decision whether to exclude expert testimony. *United States v. VonWillie*, 59 F.3d 922, 928–29 (9th Cir. 1995); *United States v. Alonso*, 48 F.3d 1536, 1539 (9th Cir.1995); *United States v. Rahm*, 993 F.2d 1405, 1409–10 (9th Cir.1993).[1] A district court abuses its discretion when it bases its decision on an erroneous view of the law or a clearly erroneous assessment of the facts. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990).

Neither the government in objecting to the proffered expert testimony nor the district court in excluding it stated the rule of evidence on which it relied. The court stated only that it would not allow Crosby to testify as to what Morales did or did not understand because that was a question for the jury. Presumably, the court excluded Crosby's testimony under Federal Rule of Evidence 704(b) or under Federal Rule of Evidence 702. These are the two relevant federal rules which govern the admissibility of expert testimony. Rule 702 provides that the witness must qualify as an expert and that there must be a justification for his testimony in the particular case. Once that test is met, Rule 704(b) limits the expert's testimony by prohibiting him from testifying as to whether the defendant had the mental state or condition that constitutes an element of the crime charged.

Because we do not know which of these two rules may have formed the basis for the district court's decision, we evaluate the proffered evidence's admissibility under both rules. If the evidence could have been excluded under either rule, the district court did not abuse its discretion. *See United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir.1984) (independently reviewing for adequate reasons to exclude where basis of trial judge's decision to exclude was unclear).

### B. Rule 704(b)

 Generally, experts may testify as to their opinions on ultimate issues to be decided by the trier of fact. *See* Fed.R.Evid. 704(a). However, Rule 704(b) makes a limited exception to this general rule in criminal cases. Rule 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

Fed.R.Evid. 704(b).

The first issue we decide is whether Rule 704(b) applies to all expert witnesses who are asked to state an opinion or inference as to a defendant's mental state or condition, or whether the rule applies only to psychiatrists or other mental health experts. Morales's proffered expert was not a psychiatrist or mental health expert. She was an accountant. If Rule 704(b) does not apply to her, it could not provide the source for the exclusion of her testimony.

---

**1.** In *Rahm*, 993 F.2d at 1409–10, we explained that in the past we have sometimes described our standard of review in the area of expert testimony as review for "abuse of discretion" and sometimes as review for "manifest error." *Compare, e.g., United States v. Barker*, 942 F.2d 585, 589 (9th Cir.1991) (abuse of discretion) with *United States v. Sinigaglio*, 942 F.2d 581, 584 (9th Cir. 1991) (manifest error). On occasion we have used both characterizations. *See, e.g., United States v. Arvin*, 900 F.2d 1385, 1389 (9th Cir. 1990), *cert. denied*, 498 U.S. 1024, 111 S.Ct. 672,

112 L.Ed.2d 664 (1991) and *United States v. Binder*, 769 F.2d 595, 601 (9th Cir.1985).

We expressed a preference in *Rahm* for a uniform application of the abuse of discretion standard. *See Rahm*, 993 F.2d at 1410. We also noted that "[t]here appears to be no practical difference between the two." *Id.* To the extent that abuse of discretion is different from manifest error, we now overrule the cases which set forth the latter standard and adopt the abuse of discretion standard.

Several circuits have suggested that Rule 704(b) may have a limited reach, and apply only to psychiatrists and other mental health experts. *See, e.g., United States v. Gastiaburo,* 16 F.3d 582, 588 (4th Cir.), *cert. denied,* 513 U.S. 829, 115 S.Ct. 102, 130 L.Ed.2d 50 (1994); *United States v. Lipscomb,* 14 F.3d 1236, 1240–43 (7th Cir.1994); *United States v. Richard,* 969 F.2d 849, 855 n. 6 (10th Cir.), *cert. denied,* 506 U.S. 887, 113 S.Ct. 248, 121 L.Ed.2d 181 (1992). The circuits which support this restricted view have found support in the rule's legislative history. This legislative history suggests that Congress intended to limit the reach of Rule 704(b) to psychiatrists and other mental health experts. The 1984 Senate Report introducing Rule 704(b) explains the rule's purpose as follows:

> With respect to limitations on the scope of expert testimony *by psychiatrists and other mental health experts,* ... [this] bill amends Rule 704 of the Federal Rules of Evidence to [add section (b) ].
>
> . . . .
>
> The purpose of this amendment is to eliminate the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact. Under this proposal, expert *psychiatric testimony* would be limited to presenting and explaining their diagnoses, such as whether the defendant had a severe mental disease or defect and what the characteristics of such a disease or defect, if any, may have been.

S.Rep. No. 225, 98th Cong., 2d Sess. 230 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3412 (emphasis added). Similarly, the report of the House Judiciary Committee states:

> While the medical and psychological knowledge of expert witnesses may well provide data that will assist the jury in determining the existence of the [insanity] defense, no person can be said to have expertise regarding the legal and moral decision involved. Thus, with regard to the ultimate issue, *the psychiatrist, psychologist or other similar expert* is no more qualified than a lay person.

H.R.Rep. No. 577, 98th Cong., 1st Sess. 16 (1983) (emphasis added).

The problem with relying on the foregoing legislative history is the problem inherent in all legislative history. We cannot know what the individual senators and house members who voted for the rule intended simply by reading the Senate and House Reports.

■ This is not, however, the only problem with the legislative history argument. Before looking at any legislative history, we first look at the rule itself. If the meaning of the rule is perfectly plain from its language, that ends the inquiry. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701–02, 66 L.Ed.2d 633 (1981).

■ The language of Rule 704(b) is perfectly plain. It does not limit its reach to psychiatrists and other mental health experts. Its reach extends to all expert witnesses.

The introductory clause of the rule does not limit this reach. This clause provides: "No expert witness *testifying with respect to the mental state or condition of a defendant* ...." Fed.R.Evid. 704(b) (emphasis added). The "mental state or condition" refers to that "of a defendant in a criminal case." If that mental state or condition is an element of the crime charged or a defense thereto, "no expert witness" may testify to it, regardless of whether the witness testifying is a psychiatrist or other mental health expert.

Because Rule 704(b) applies to the accounting expert Morales presented as a witness, the next question is whether this rule precluded the proffered testimony. We hold it did not.

To convict Morales under 29 U.S.C. § 439(c), the government had to prove that she *willfully* made false bookkeeping entries.

■ The statute provides:

> Any person who willfully makes a false entry in ... any books, records, reports, or statements required to be kept by any

provision of this subchapter shall be fined not more than $10,000 or imprisoned for not more than one year, or both.

29 U.S.C. § 439(c). Willfulness requires that an act be done knowingly and intentionally, not through ignorance, mistake or accident. *Ninth Circuit Manual of Model Jury Instructions–Criminal,* 5.05 (West 1995). Morales had to *know* that her entries were false.

▊▊▊ To exclude Crosby's expert testimony under Rule 704(b), the district court would have had to conclude that Crosby would have stated an opinion or drawn an inference which would necessarily compel the conclusion that Morales did not make the false entries willfully. This was not the content of the proposed testimony.

Crosby was not going to state an opinion or draw an inference that Morales did not intend to make false entries. Rather, she was going to state her opinion as to a predicate matter—that Morales had a weak grasp of bookkeeping principles. Morales's counsel advised the court that Crosby would testify as to Morales's "understanding of bookkeeping principles," and Morales's "level of understanding of bookkeeping concepts."

Even if the jury believed Crosby's expert testimony that Morales had a weak grasp of bookkeeping knowledge (and there was evidence to the contrary), the jury would still have had to draw its own inference from that predicate testimony to answer the ultimate factual question—whether Morales willfully made false entries. Morales could have had a weak grasp of bookkeeping principles and still knowingly made false entries as charged. Thus, Crosby was not going to testify to an opinion or draw an inference as to the ultimate issue of Morales's *mens rea* within the meaning of Rule 704(b).

A prohibited "opinion or inference" under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite *mens rea.* As just explained, this was not the case. Morales hoped, of course, that the jury would infer from Crosby's testimony that her errors were due to ignorant but innocent mistakes. But such a conclusion was by no means compelled, even if the jury believed that Morales had a weak grasp of bookkeeping principles.

We conclude that, if the district court based its decision to exclude Crosby's testimony on Rule 704(b), it misapplied the law and thus abused its discretion. A contrary conclusion would favor a reading of Rule 704(b) that not only would exclude an expert's opinion as to whether a defendant did or did not have the requisite mental state, but would also exclude an expert's opinion on any matter from which the factfinder might infer a defendant's mental state. This is not what Rule 704(b) says. Nor is it the interpretation we have given the rule in decisions since *Brodie. See, e.g., Rahm,* 993 F.2d at 1411–12 & n. 3 (9th Cir.1993); *Gomez–Norena,* 908 F.2d at 501.

In *Brodie,* a husband and wife were convicted of willfully failing to file tax returns. They were not charged with tax evasion, just failure to file tax returns required to be filed regardless of whether they actually owed any tax. *Brodie,* 858 F.2d at 493 & 496. They wanted to call an accountant to testify that he had examined their business records and determined that they owed very little money in taxes during the years in question. *Id.* at 495. The defendants apparently hoped that this testimony would support their contention that their failure to file the tax returns was not willful. We upheld the district court's exclusion of the expert testimony because the jury might have " 'use[d] that [testimony] to extrapolate to another position....' " *Id.* at 496. We held, relying on Rule 704(b), that "the accountant's testimony, if admitted, would have impermissibly stated an opinion as to the Taxpayers' willfulness, a mental state which is an element of the crime charged." *Id.*

We now reject *Brodie*'s Rule 704(b) analysis. To say that an accountant's testimony that the defendants owed very little money in taxes states an opinion or inference that they did not willfully fail to file their tax returns ignores the jury's task of making that ultimate inference. If the taxpayers in *Brodie* had a small tax liability, the jury *might* have inferred it was less likely their failure to file their tax returns was willful; but such an inference was not required. The defendants

could have willfully failed to file their tax returns even if they did not owe a penny in taxes.

In more recent cases we have adopted an interpretation of Rule 704(b) that allows testimony supporting an inference or conclusion that the defendant did or did not have the requisite *mens rea,* so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony.

In *Rahm,* the defendant was charged with attempting to knowingly pass counterfeit currency. *Rahm,* 993 F.2d at 1408. The district court excluded the testimony of a defense expert who was going to testify that the defendant had poor visual perception and consistently overlooked important visual details. *Id.* at 1409. This testimony was offered to bolster the defendant's sole defense that she did not know the money was counterfeit. *Id.* We reversed her conviction on the ground that the district court improperly excluded the proffered expert testimony. *Id.* at 1408. We noted that under Rule 704(b) the expert was prohibited from expressing an opinion as to the defendant's *mens rea*— whether she *knew* the bills were counterfeit. *Id.* at 1411 n. 3. We drew a distinction, however, between this ultimate issue testimony and the proffered testimony of the defendant's poor vision, from which the jury could, but was not compelled, to infer that she did not know the bills were counterfeit. *Id.* at 1411–12.

In *Gomez–Norena,* we upheld the admission of a DEA agent's testimony that in his opinion the possession of $200,000 worth of cocaine was consistent with an intent to distribute rather than with possession for personal use. *Gomez–Norena,* 908 F.2d at 502. We upheld the admission because "[a]t no time did [the DEA agent] give his opinion of what [the defendant] actually thought." *Id.* Clearly the prosecution presented this testimony hoping the jury would infer the requisite *mens rea*—the defendant's intent to distribute. *See also United States v. Kinsey,* 843 F.2d 383, 388–89 (9th Cir.), *cert. denied,* 488 U.S. 836, 109 S.Ct. 99, 102 L.Ed.2d 75

(1988). But the testimony did not compel that inference.

Other circuits have also interpreted Rule 704(b) to exclude only testimony as to a defendant's actual mental state during the charged offense or testimony which necessarily would imply that ultimate conclusion. *See, e.g., Richard,* 969 F.2d at 854–55 ("The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state."); *United States v. Foster,* 939 F.2d 445, 454 (7th Cir.1991) (testimony "merely assisted the jury in coming to a conclusion as to [defendant's] mental state; it did not make that conclusion for them"); *cf. United States v. Dunn,* 846 F.2d 761, 762 (D.C.Cir.1988) ("It is only as to the last step in the inferential process—a conclusion as to the defendant's actual mental state—that Rule 704(b) commands the expert to be silent.").

We conclude that the proffered expert testimony was not excludable under Rule 704(b). We overrule *Brodie*'s Rule 704(b) analysis which is inconsistent with this holding.

## C. *Rule 702*

We also conclude the proffered testimony was not excludable under Rule 702.

Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702.

An expert witness's "[t]estimony is admissible under Rule 702 if [1] the subject matter at issue is beyond the common knowledge of the average layman, [2] the witness has sufficient expertise, and [3] the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *United States v. Winters,* 729 F.2d 602, 605 (9th Cir.1984) (citing McCormick's Handbook of the Law of Evidence § 13, at 29–31 (E.Cleary 2d ed. 1972)).

■ Here, the subject matter at issue—bookkeeping principles and Morales's grasp of them—was clearly beyond the common knowledge of the average layperson. Expert testimony from one who understands bookkeeping and has gained familiarity with Morales and her work would aid the jury in assessing Morales's bookkeeping skills. The first element of the *Winters* test is satisfied.

As to the second element of the *Winters* test, Hilary Crosby had sufficient expertise to assert an opinion on Morales's knowledge of bookkeeping principles. The district court determined that Crosby was qualified to testify about auditing and bookkeeping. She had twenty years of bookkeeping experience at the time of trial and had been a certified public accountant for a year and a half. She regularly performed audits, which required her to familiarize herself with the methods and practices used by the bookkeepers of the companies she was auditing. By interviewing bookkeepers and by reviewing the records they kept, she was required to evaluate their reliability and competence in order to determine how best to conduct her audits. Just as she had done with many other bookkeepers, Crosby interviewed Morales regarding her bookkeeping methods and reviewed the records Morales maintained. Crosby's experience judging bookkeepers' reliability and competence enabled her to offer an informed and helpful opinion on Morales's level of bookkeeping knowledge.

The third element of the *Winters* test requires that the state of the art permit assertion of a reasonable opinion. As discussed above, an auditor's duties require her to assess bookkeepers' skills. Thus, an auditor can assert a reasonable opinion about a bookkeeper's competence based on knowledge ascertained by reviewing her work and interviewing her about her bookkeeping methods.

The government argues that Morales may have intentionally deceived Crosby in an effort to conceal criminal activity, and that consequently Crosby's opinion may be incorrect. This may be so, but the law does not require every expert who testifies to be an expert in detecting deceit.

We conclude that Crosby was qualified under Rule 702 to offer a "reasonable" opinion, helpful to the jury, on Morales's level of bookkeeping knowledge. Rule 702 did not preclude the proffered testimony.

### D. *Federal Rule of Evidence 103(a)(2)*

■ The government argues the exclusion of Crosby's testimony was not reversible error because the substance of the testimony was not made known to the court as required by Federal Rule of Evidence 103(a)(2). We disagree.

Rule 103 provides in pertinent part:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) . . .

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Morales's counsel advised the court that Crosby intended to testify as to Morales's "understanding of bookkeeping principles," and her "level of understanding of bookkeeping concepts." Morales's counsel also stated:

I also wanted to elicit, just as the government elicited from Sandy Pritchett, the opinion of Ms. Morales' understanding of bookkeeping principles. We did hear an opinion from Sandra Pritchett that Gloria Morales was a good bookkeeper, that she quickly picked up all of these principles, and then she testified that she understood bookkeeping principles.

These remarks made known to the district court the substance of Crosby's testimony, and were sufficient to satisfy Rule 103(a)(2).

### E. *Federal Rule of Evidence 403*

■ The government next argues that Crosby's proffered testimony was excludable under Federal Rule of Evidence 403. It argues that "expert testimony by its very nature can be disproportionately compelling," and therefore Crosby's proffered testimony

would have been unfairly prejudicial. We disagree.

Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Crosby's proffered testimony would not have resulted in undue prejudice, the ground apparently relied upon by the government. The government presented three witnesses who testified that in their opinions Morales was knowledgeable about her bookkeeping duties and/or had a strong grasp of bookkeeping principles. Aside from Julian Vega's testimony that Morales received no written instructions on how to perform her job responsibilities, Crosby's testimony was the only corroborating evidence Morales sought to introduce regarding her level of bookkeeping knowledge. This proffered testimony was probative of Morales's contention that she did not know her entries in the books were false. The testimony would not have been unfairly prejudicial.[2]

### F. Harmless Error

We next consider whether the district court's error was harmless.

When expert testimony has been erroneously excluded, we apply the harmless error standard for nonconstitutional error. *Rahm*, 993 F.2d at 1414. We must reverse unless there is a "fair assurance" of harmlessness or, stated otherwise, unless it is more probable than not that the error did not materially affect the verdict. *United States v. Crosby*, 75 F.3d 1343, 1349 (9th Cir.1996). After reviewing the trial court record, we conclude that the erroneous exclusion of Crosby's testimony was not harmless.

The parties do not dispute that Morales's bookkeeping entries were false. The only

disputed issue relating to the false entry charges is whether Morales intentionally made the false entries. The government's circumstantial evidence that Morales had the necessary *mens rea* was significant but not overwhelming. It introduced evidence that Morales had taken only two days of vacation from July 5, 1988 through November 21, 1991 although she had earned approximately nine weeks. It established that Morales told her supervisor that the money was missing the day after he announced he was going to implement a new job-rotation system in which someone else would be trained to perform Morales's bookkeeping duties. Most importantly, the government presented three witnesses who cumulatively testified that Morales was an excellent bookkeeper, that she was knowledgeable about bookkeeping, that she understood her job training well and that she appeared knowledgeable about handling receipts and disbursements.

Morales's sole defense to the false entry charges was that she did not know her entries were false. She testified to this. The exclusion of Crosby's expert testimony deprived Morales of the only corroborating evidence she had. Moreover, the jury could have chosen to believe the expert, Crosby, as opposed to the government's witnesses. Because we cannot say it is more probable than not that the district court's error in excluding Crosby's testimony did not materially affect the jury's verdict, the error was not harmless and we must reverse. *See Rahm*, 993 F.2d at 1415.

### CONCLUSION

We hold that the district court erred by excluding the proffered expert testimony. The expert, Crosby, was qualified under Rule 702 to offer a reasonable opinion on Morales's level of bookkeeping expertise, and that opinion would have aided the jury in assessing whether Morales willfully made false entries in the Local's books.

---

2. Because we hold that Crosby's testimony was not excludable under Rule 702, 704(b), 103(a)(2) or 403, we need not address Morales's argument that even if the testimony was excludable, the government's introduction of testimony that Mor-

ales had a strong understanding of bookkeeping principles "opened the door" to the admission of Crosby's testimony. We express no opinion on this issue.

Rule 704(b) is not limited to psychiatrists and other mental health experts. It applies to any "expert witness testifying with respect to the mental state or condition of a defendant in a criminal case" who is asked to "state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto." Fed.R.Evid. 704(b).

The expert, Crosby, intended to testify to a predicate matter—Morales's level of understanding of bookkeeping principles—and not to whether Morales willfully made the false entries. Rule 704(b) does not preclude expert testimony from which a jury might infer that a criminal defendant did or did not possess the requisite *mens rea*. The rule only precludes expert testimony of an opinion or inference that the defendant did or did not have the requisite *mens rea* and testimony of an opinion or inference which if true would compel the conclusion that the defendant did or did not have the requisite *mens rea*.

Finally, the proffered testimony was not excludable under Rules 103(a)(2) or 403. Its exclusion was erroneous, and the error was not harmless. Morales's conviction is reversed.

REVERSED.