**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James MERRIAM, Defendant–**
**Appellant.**

No. 01–10537.

D.C. No. CR–95–00245 (MJJ).

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 2003.

Decided June 26, 2003.

Before HUG, GIBSON,* and FISHER, Circuit Judges.

### MEMORANDUM**

James Merriam appeals from his convictions for conspiracy, securities fraud, and wire fraud in violation of 18 U.S.C. §§ 371, 1343 (2000) (conspiracy and wire fraud) and 15 U.S.C. §§ 78j, 78f(f) (2000) (securities fraud). Merriam contends that the district court erred by allowing a government expert witness to testify as to Merriam's state of mind in violation of Fed. R.Evid. 704(b) and by permitting the government to pursue a line of cross-examination which Merriam alleges should have been excluded under Fed.R.Evid. 608(b). Because the district court did not abuse its discretion in making these evidentiary rulings, we affirm the conviction.

Merriam first argues that the district court erred by allowing the government's expert witness, Halley Milligan, to testify about the typical role of an issuer of stock in a "pump and dump" fraud scheme. Merriam claims that this testimony led the jury to make an inference as to his state of mind in violation of Fed.R.Evid. 704(b).[1]

---

* The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Federal Rule of Evidence 704(b) states: "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

A district court's decision to admit expert testimony is reviewed under an abuse of discretion standard. *United States v. Gonzales,* 307 F.3d 906, 909 (9th Cir.2002); *see also United States v. Marabelles,* 724 F.2d 1374, 1381 (9th Cir.1984) ("On review, our Court will reverse only if the District Court abused its wide discretion or committed 'manifest error' in excluding [expert] testimony.").

At the end of the government's redirect examination of Milligan, the following exchange took place:

BY MS. KANE [Assistant U.S. Attorney]:

Q. In your experience, is there any correlation between the fact of an issuance being involved in a pump and dump scheme and the issuer's involvement in that scheme?

A. [Milligan] Yes.

Q. Can you explain?

A. Yes. Because to the extent there is an issuance of securities, the issuer would be involved in drafting, offering circulars, prospectuses, registration statements, pertaining to the issuance of securities; and it would be the issuer who would have the authority to allow the transfer agent to release certificates.

Q. So just to make sure I understand the conclusion, is it more or less likely, in your experience, that an issuer is involved in a pump and dump scheme when there is an issuance ongoing?

MR. MOORE: Calls for speculation. Lack of foundation.

THE COURT: Based on her experience, I would allow her to answer the question.

THE WITNESS: I would say, in my experience, it's more likely.

Although Milligan did not directly discuss Merriam's mental state (i.e. whether Merriam himself, rather than issuers of stock in general, had the intent necessary to commit stock fraud), Merriam argues that the opinion rendered by Ms. Milligan was the "functional equivalent" of an opinion concerning Merriam's mental state, which was an element of the crime with which he was charged.

To exclude an expert witness's testimony under Rule 704(b), the district court had to conclude that Milligan stated an opinion or drew an inference which *necessarily* compelled the conclusion that Merriam knowingly committed stock fraud. *See United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir.1997) (en banc). In *Morales,* this court agreed with a line of cases which had held that "Rule 704(b) does not preclude an expert from testifying to a predicate matter, even if the jury might infer the necessary *mens rea* from such testimony, so long as the testimony as to the predicate matter does not necessarily imply the *mens rea* element." *Id.* at 1033 (overruling *United States v. Brodie,* 858 F.2d 492 (9th Cir.1988)). Milligan's testimony did not compel the conclusion that Merriam, as the issuer of stock, knew of Sheppard's plan to promote the stock price and to sell off a large amount of stock once the price rose to a certain level. Rather, the expert testimony presented by the government gave the opinion that it was "more likely" that the issuer would be involved in a "pump and dump" scheme, if the issuer was issuing stock during the promotion period, primarily because the issuer is normally involved in drafting documents and in authorizing the release of stock. In other words, Milligan testified about the likely *role* that the issuer might play in such a scheme given certain underlying facts. As we explained in *United States v. Kinsey,* 843 F.2d 383, 388 (9th Cir.1988) (overruled on other grounds by *United States v. Nordby,* 225 F.3d 1053, 1059 (9th Cir.2000)), "we [have] distinguished opinions regarding a defendant's guilt or innocence from expert testimony

regarding the various roles which an individual may play in illegal enterprises."[2]

■ Second, Merriam claims that the government's questions on cross-examination regarding the valuations of the portfolio companies owned by Vintage Group, Inc. were not probative of Merriam's character for truthfulness or untruthfulness, and thus, were not proper subjects for Rule 608(b) impeachment. *See* Fed. R.Evid. 608(b).[3] Furthermore, Merriam claims that the district court abused its discretion by not excluding this evidence as more prejudicial than probative under Fed.R.Evid. 403.

The trial court's decision to permit cross-examination is also reviewed for abuse of discretion. *United States v. Senchenko*, 133 F.3d 1153, 1158–59 (9th Cir. 1998).

Shortly before Merriam took the stand, the government stated its intent to confront Merriam with the large discrepancy between Vintage's press release and the actual profits of the company, and in particular, cross-examine him about the valuations of Vintage's portfolio companies. Defense counsel objected to the introduction of the valuations issue on cross-examination because it would go beyond the scope of Merriam's testimony and because defense counsel had been unable to present expert testimony on the proper valuations of individual portfolio companies.

The court stated that it would allow the government to cross-examine Merriam with respect to the valuations of the portfolio companies, as reflected in the quarterly 10Q reports submitted to the SEC. Furthermore, the court held that (1) "Merriam's activity with respect to—potential testimony with respect to the intent to deceive question, that the capitalization and accuracy of the financial documents that innovate these portfolio companies in the totality of the alleged scheme here, that it is a material question" and (2) the government could cross-examine Merriam under 608(b), but the court would not allow extrinsic evidence to be presented on the issue.

"A defendant who testifies in [his] own defense ... subjects [himself] to cross-examination concerning 'any matters reasonably related to the subject matter of [his] direct testimony.'" *United States v. Cuozzo*, 962 F.2d 945, 948 (9th Cir.1992) (citations omitted). The government's questions regarding valuations of portfolio companies were "reasonably related" to the subject matter of Merriam's direct testimony. The valuations of the portfolio companies were relevant to Merriam's "character for truthfulness or untruthfulness" because the valuations called into question Merriam's earlier representations on direct examination that Vintage drew positive value from the portfolio companies.[4]

**2.** For similar reasons, we find no merit to the argument that Milligan's testimony should have been excluded for lack of foundation or under Fed.R.Evid. 403. Milligan's testimony did not exceed the scope of her qualifications. Nor did she speculate regarding Merriam's involvement in the pump and dump scheme.

**3.** Federal Rule of Evidence 608(b) states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness,

be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

**4.** The government's questions on cross-examination showed that there was a disparity between the positive market values ascribed to several portfolio companies in Vintage's literature and the negative net worth listed by these companies in their own documents. While Merriam's counsel argued that these

Even if, as Merriam contends, the valuations questions were not probative of his credibility, the prejudicial effect of this evidence is not so great as to require a new trial.[5] Accordingly, his conviction is AFFIRMED.

questions unfairly implied that Merriam was engaged in material misrepresentations, these questions could also be understood in terms of the charge of market manipulation. The government prefaced the valuations issue with questions about Merriam's decision to distribute capital raised in the stock offering to himself, Sheppard, and Lot E instead of infusing this capital back into the portfolio companies. The valuations issue was also examined in the context of the May 2 drop in the stock price and Vintage's press release, which attempted to assuage the fears of investors. These facts, taken in context, show the probative value of the valuations questions.

5. Merriam argues that financial numbers which were certified by Vintage's accountants

according to Generally Accepted Accounting Principles (GAAP) could not serve as the evidentiary basis for Rule 608(b) impeachment. He contends that these numbers did not touch upon the truthfulness or untruthfulness of his financial representations about the portfolio companies. While this argument may have some merit, the district court's decision to allow this evidence for the limited purpose of cross-examination does not rise to an abuse of discretion.