**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**GUO XIN HUANG, Defendant—**
**Appellant.**

**No. 05–30056.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 2006.

Filed March 6, 2006.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Joseph E. Thaggard, Esq., USGF—Office of the U.S. Attorney, Great Falls, MT, for Plaintiff–Appellee.

John P. Rhodes, Esq., Federal Defenders of Montana, Missoula, MT, for Defendant–Appellant.

Before: LEAVY, RYMER, and FISHER, Circuit Judges.

### MEMORANDUM *

Guo Xin Huang appeals from his jury conviction and sentence for conspiracy to import marijuana, in violation of 21 U.S.C. § 963, attempted importation of marijuana, in violation of 21 U.S.C. § 952, and attempting to smuggle marijuana, in violation of 18 U.S.C. § 545. As the parties are familiar with the facts and prior proceedings, we will not recount them here. Huang raises several arguments including that the district committed reversible error by permitting the government to elicit expert testimony regarding the ultimate issue of whether Huang knew that the trailer he was hauling contained a secret compartment filled with marijuana. We reverse Huang's conviction on all counts and remand for further proceedings.

### A. Testimony at Trial

During its case in chief, the government called as a witness Canadian Customs Officer Chris Gahan who was a member of a surveillance team investigating the drug smuggling operation. On cross-examination of Gahan, the defense attempted to elicit testimony which might show that Huang was an unwitting courier. The following transpired:

DEFENSE ATTORNEY: In this ongoing investigation, there's hundreds of pages of information. No one has ever said anything about Mr. Huang being involved; is that correct?

GAHAN: Apart from taking the tractor/trailer into the warehouse and being intercepted at Sweet Grass, Montana with a large shipment, and being associated to another seizure in Ontario, there were—I don't have more information on Mr. Huang, no.

DEFENSE ATTORNEY: So that's all the Canadian investigation has, what you just summarized?

GAHAN: The surveillance on Mr. Huang at the warehouse.

DEFENSE ATTORNEY: On May 8th?

GAHAN: On May 8th, the registration of Mr. Huang for the—for a trailer that was involved in another seizure, I think

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

his attendance at the warehouse is significant, *because it indicates a comfort level with Mr. Kong or other people who were operating the warehouse* that Mr. Huang be there; where we saw other drivers that were involved, we never ever saw at the warehouse. And there was obviously some association between Mr. Huang and the two individuals that we saw on a regular basis using the van to go from the warehouse to the stash houses and back again.

(Emphasis added.)

On the government's re-direct examination of Gahan, the following transpired:

PROSECUTOR: And you talked about a comfort level which you felt was demonstrated by Mr. Huang and this warehouse. Can you please explain that to the jury.

DEFENSE ATTORNEY: Objection. It's been asked and answered, Your Honor.

THE COURT: Well, this was opened up on cross. I'm going to allow him to make an explanation. Go ahead.

GAHAN: Thank you. There's a certain security that the individuals have to have when they're running an operation like a warehouse that they're using to load up vehicles, whether it be commercial vehicles or anything that they're going to transport marijuana in. One of the biggest fears they have is that someone is going to reveal the location of the warehouse.

One of the riskiest parts of transporting the marijuana is taking it into the U.S. for the driver. And that would be—If he's arrested, there will be incredible pressures for him to reveal where the marijuana has come from. Where was the location where the marijuana was loaded into the tractor/trailer. And Mr. Huang being at the warehouse, *I believe he would know where that marijuana came from or where the tractor/trailer came from.*

DEFENSE ATTORNEY: Objection. Ultimate issue, Your Honor.

COURT: Well, the jury will assess the worth of the testimony.

(Emphasis added.)

B. *Analysis*

Federal Rule of Evidence 704(b) states:

No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The sole issue for the jury in each of the crimes charged was whether Huang knew he was transporting marijuana. The government acknowledged that Gahan, as an expert witness, ordinarily would be precluded from opining that Huang knew of the marijuana found in the trailer. The government argues that the defense "opened the door" to this issue, and, in any event, the testimony was harmless. We disagree.

The defense did not "open the door" to testimony about the ultimate mens rea issue because it neither questioned Gahan about Huang's knowledge of the marijuana nor did Gahan's testimony create a "false impression" as to Huang's mens rea in the minds of the jurors. *United States v. Kessi,* 868 F.2d 1097, 1108 (9th Cir.1989); *see also United States v. Hegwood,* 977 F.2d 492, 496 (9th Cir.1992). "We previously have allowed the Government to introduce otherwise excludable testimony when the defendant 'opens the door' by introducing potentially misleading testimony." *United States v. Beltran–*

*Rios,* 878 F.2d 1208, 1212 (9th Cir.1989) (internal citation omitted). When Gahan stated: "I believe he [Huang] would know where that marijuana came from," he testified as to whether Huang had the mental state constituting an element of the crime. The defense properly objected to this testimony as "ultimate issue" testimony, and, pursuant to Fed. Rule of Evid. 704(b), the district court erred in overruling the objection and admitting the testimony.

Because the defendant objected at trial, we review for harmless error. *See United States v. Brown,* 327 F.3d 867, 871 (9th Cir.2003) (stating that when there is an objection, we review for harmless error, and when there is no objection, we review for plain error). When reviewing for non-constitutional error, "[w]e must reverse unless there is a fair assurance of harmlessness, or stated otherwise, unless it is more probable than not that the error did not materially affect the verdict." *United States v. Morales,* 108 F.3d 1031, 1040 (9th Cir.1997) (en banc) (internal quotation marks and citation omitted). We consider the error in the context of the entire trial, and examine the substance of any curative instruction and the closeness of the case. *Brown,* 327 F.3d at 871.

In an effort to minimize the error, Huang proposed a curative instruction directing the jury to disregard Officer Gahan's opinion that Huang had knowledge of the marijuana in the trailer he was hauling. The district court failed to give a curative instruction. The jury deliberated three days following a three day trial. At one point, two jurors felt they were hopelessly deadlocked. On this record, we cannot say that the error in admitting Gahan's opinion testimony about Huang's knowledge of the marijuana was harmless. *See*

* This panel unanimously finds this case suitable for decision without oral argument. *See*

*United States v. Velarde–Gomez,* 269 F.3d 1023, 1036 (9th Cir.2001) (en banc) (stating that longer jury deliberations weigh against a finding of harmless error in a two-count drug case with four days of jury deliberation).

Huang's conviction is reversed and this case is remanded to the district court for further proceedings. We therefore need not discuss Huang's remaining claims. *Id.* at 1037.

REVERSED and REMANDED.